WILLIE NARED, APPELLEE, v. SCHOOL DISTRICT OF OMAHA IN THE COUNTY OF DOUGLAS, IN THE STATE OF NEBRASKA, APPELLANT, IMPLEADED WITH CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLEE.

215 N. W. 2d 115

Filed February 28, 1974. No. 39156.

Baird, Holm, McEachen, Pedersen, Hamann & Haggart, for appellant.

J. V. Benesch and Alfred A. Fiedler, for appellee Nared.

George Selders, for appellee City of Omaha.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and FLORY, District Judge.

CLINTON, J.

Plaintiff, a policeman, was injured when he fell through a false ceiling at Kellom School in Omaha while investigating a report of a possible burglary in progress. He bases this action on certain claims of negligence on the part of the school district. The defendant school district denied negligence and alleged contributory negligence and assumption of risk. The case was filed under the Political Subdivisions Tort Claims Act and was therefore tried by the court alone. Plaintiff was awarded a judgment. The defendant school district appeals. We reverse and direct dismissal.

On the night of August 10, 1971, the plaintiff and another officer responded to a radio call from their headquarters, apparently initiated as a result of a signal from an automatic alarm system at the school which was directly connected with police headquarters. Upon arrival at the school the officers captured one juvenile intruder and searched for others who had been observed. In the course of searching the building they discovered an open trap door or scuttle hole in the ceiling of a janitor's closet on the second floor of the school. The scuttle hole opened upon the air space between the roof of the building and the false ceiling of the second floor. Following a fruitless attempt to turn on lights in the attic space, the plaintiff, using closet shelves as a ladder, climbed into the attic and with the aid of a flashlight began his search. The scuttle hole opened upon a catwalk which extended through the attic a distance of 104 feet. The officer proceeded down the catwalk searching with his flashlight. The catwalk consisted of two parallel widths of plank laid upon wooden or steel

stirrups which in turn were supported from the ceiling by steel straps. The floor of the catwalk was immediately above the false ceiling and adjacent to the catwalk on both sides at about floor level were various utility pipes. After the plaintiff had moved along the catwalk for 50 or 75 feet he stumbled from the catwalk and fell through the false ceiling to the floor 10 feet below. He testified: "I just stumbled and fell. . . . Q Did you trip over some object as you fell? A I would say so, yes. . . . Q And you did feel yourself tripping? A Falling to the left of the catwalk there." Plaintiff was unable to identify any object over which he tripped. However, photographs taken a few days after the accident disclose a loose 2″ x 4″ perhaps 5 or 6 feet in length with a single nail projecting from each end and resting upon some utility pipes. One end of the board extended part way over the catwalk. The other extended over and slightly down into the break in the false ceiling made by the plaintiff when he fell. There was no evidence to indicate how the 2″ x 4″ came to be there, or how long it had been there, or that any of the agents of the school district had notice of its presence.

The trial court found that the plaintiff had stumbled over the board and that the attic did not have any operable lighting system at the time. It adopted the plaintiff's theory that he was an invitee by reason of the alarm having been given by the automatic signal connected directly to the police building; that the position of the board in the dark attic constituted a dangerous condition; and that the school district should have anticipated possible use of the catwalk by investigating officers. The District Court further found that the defendant had a duty to make the attic area "safe as to those dangerous conditions of which it knew or in the exercise of reasonable care should know, or to give the invitee warning adequate to enable him to avoid harm."

Policemen and firemen who are privileged to enter

premises in the course of their duties as public officers without reference to any express or implied invitation from the owner or occupier are in some jurisdictions held to be in the same class as a business invitee and in others to have the status of a licensee. 65 C. J. S., Negligence, §§ 63 (110), 63(111), pp. 861, 865. This court has heretofore classified firemen as licensees. Wax v. Co-Operative Refinery Assn., 154 Neb. 805, 49 N. W. 2d 707; New Omaha Thomson-Houston Electric Light Co. v. Anderson, 73 Neb. 84, 102 N. W. 89. Restatement, Torts 2d, § 345, p. 226, classifies such persons generally as licensees, but gives them the status of invitees if they are on the premises for a public purpose and suffer harm because of a condition on a part of the premises held open to the public. The duty of the possessor of the premises to the public officer under these separate classifications is illustrated by the following examples taken from Restatement: "1. A is in possession of a building in which, on a back stairway not open to the public, there is a step which is dangerously defective. A and his employees do not know of the defect, but by the exercise of reasonable care could easily discover it. In the middle of the night a fire breaks out in the building, and B, a public fireman, comes to extinguish it. He ascends the stairway, and is injured by the collapse of the defective step. A is not liable to B. . . .

"3. The same facts as in Illustration 1, except that A knows that the step is dangerously defective, is present when B arrives and starts to ascend the stair, and fails to warn B. A is subject to liability to B. . . .

"5. A, a police officer, enters B's department store, which at the time is open to the public, to make an official inquiry concerning a former employee. On his way into the store he is injured by the collapse of the entrance steps. B does not know of the defective condition of the steps, but by the exercise of reasonable care in in-

spection should have discovered it. A is an invitee, and B is subject to liability to him." Restatement, Torts 2d, § 345, pp. 228, 229.

Restatement does not make the officer's status depend upon whether or not the occupier has specifically requested the officer's services or not, nor upon the means by which he is notified that his services are required. We can see no reason why the duty which an occupier owes to a public officer who rightfully comes upon the premises in the exercise of his duty should depend upon the means by which or the person by whom he is notified that he is needed. Whether he is summoned by the occupier or by some third party, or whether because of facts which come to his attention he acts on his own initiative, should not affect the measure or nature of the duty of the occupier to him. We therefore do not in this case regard the fact that the school burglary alarm was directly connected to the police station as having any significance. An express invitation does not by itself create the status of invitee. Restatement, Torts 2d, § 332b, p. 176. The cases which have noted the question do not suggest that an invitation in the case of a public officer has any effect on his status. Lunt v. Post Printing & Publishing Co., 48 Colo. 316, 110 P. 203; Baxley v. Williams Constr. Co., 98 Ga. App. 662, 106 S. E. 2d 799; Roberts v. Rosenblatt, 146 Conn. 110, 148 A. 2d 142; Baker v. Otis Elevator Co., 78 App. Div. 513, 79 N. Y. Supp. 663. We cite the above four cases only for the limited purpose mentioned.

It is clear under the evidence that the plaintiff was injured as a result of the condition on a portion of the premises not held open to the public. He was therefore a licensee under the rules set forth in Restatement, Torts 2d, § 345, p. 226, as well as the past precedents of this court. The duty of the defendant to the plaintiff under the circumstances was only to warn, if there was an opportunity to do so, of a hidden danger known to the

defendant but unknown to the plaintiff and unobservable by the plaintiff in the exercise of ordinary care. Wax v. Co-Operative Refinery Assn., *supra;* Johnson v. Goodier, 182 Neb. 172, 153 N. W. 2d 445.

. In this case there is no evidence that the defendant knew of the condition or that it had any opportunity to warn of it. No agent or employee of the defendant was present on the premises when the accident occurred. It cannot be said that the defendant had any reason to anticipate the presence of the plaintiff in the area. It is clear that under both the past decisions of this court and under Restatement rules the defendant did not breach any duty it owed the plaintiff.

Building codes and ordinances cited by the plaintiff as affecting the defendant's duty have been closely examined and they are clearly not applicable.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.