KRESKI v MODERN WHOLESALE ELECTRIC SUPPLY COMPANY

REETZ v TIPIT, INCORPORATED

Docket Nos. 78598, 78599, 78640. Argued May 4, 1987 (Calendar Nos. 3-4). Decided November 13, 1987. Rehearing denied in *Kreski, post,* 1215.

Mary Ellen Kreski, for herself, and as personal representative of the estate of Gary Kreski, deceased, brought a wrongful death action in the Wayne Circuit Court against Edwin Weinstein and Modern Wholesale Electric Supply Company, owner and occupier, respectively, of a building in which plaintiff's decedent, a fire fighter, died in the course of duty. The Detroit Edison Company was later added as a defendant. The defendants' motions for summary judgment on the ground that tort claims by firemen and policemen against persons whose negligence caused a fire or other hazard that injures the officer in the course of duty were barred under the fireman's rule were denied, Paul S. Teranes, J. The Court of Appeals, GRIBBS, P.J., and HOOD and DAVIS, JJ., affirmed, declining to adopt a fireman's rule (Docket Nos. 80629, 82112). The defendants appeal.

Laura Reetz, a police officer, brought an action in the Wayne Circuit Court against Tipit, Inc., seeking to recover for injuries sustained when she fell through an open trap door on defendant's premises while investigating a reported breaking and entering. The court, Michael L. Stacey, J., granted summary judgment for the defendant, finding that the plaintiff was a licensee while on the premises and, therefore, was not owed a duty of reasonable care. The Court of Appeals, BEASLEY, P.J., and V. J. BRENNAN and CYNAR, JJ., affirmed in an opinion per curiam (Docket No. 81702). The plaintiff appeals.

In an opinion by Chief Justice RILEY, joined by Justices

REFERENCES

Am Jur 2d, Premises Liability §§ 103-105.

Liability of owner or occupant of premises to police officer coming thereon in discharge of officer's duty. 30 ALR4th 81.

Modern status of rules conditioning landowner's liability upon status of injured party as invitee, licensee, or trespasser. 22 ALR4th 294.

Liability of owner or occupant of premises to fireman coming thereon in discharge of his duty. 11 ALR4th 597.

Levin, Brickley, Archer, and Griffin, the Supreme Court *held:*

As a matter of public policy, fire fighters and police officers may not recover damages from private parties for injuries occasioned by negligence which caused the presence of the officers in their professional capacities on premises where the injuries occurred, including injuries arising from the normal, inherent, and foreseeable risks of their chosen professions.

1. The fireman's rule is based on practicability and common sense. The policy arguments for adopting the rule stem from the nature of the services provided by fire fighters and police officers, as well as the relationship between them and the public. The officers are employed for the benefit of society in general, and for persons requiring their presence in particular. The nature and purpose of police work and fire fighting are to confront danger and protect the public; thus, members of the public should not be liable for damages for injuries occurring in the performance of the very function police officers and fire fighters are intended to fulfill. Workers' compensation benefits are available to police officers and fire fighters injured in the course of their employment, thereby fairly spreading the cost of injuries to the public as a whole rather than to individual property owners. The rule is not limited to owners and occupiers of property.

2. Fire fighters and police officers are different than other employees whose occupations may peripherally involve hazards. They are employed, specially trained, and paid to confront dangerous situations for the protection of society, entering their professions with the certain knowledge that their personal safety is at risk while on duty. While it is predictable that situations will arise in which police officers or fire fighters will be needed, the appearance of an officer at a particular time is not, and it is unreasonable to require property owners to prepare their premises for the arrival of an officer. The fireman's rule is not a license to act with impunity, without regard for an officer's well-being, however. It only insulates liability for injuries arising out of the inherent dangers of the profession.

3. In *Kreski,* the fireman's rule is applicable to all defendants. The collapse of the roof of the premises involved was an inherent risk of fire fighting. In *Reetz,* the rule also applies. The risk encountered during the investigation of the burglary was inherent in police work.

Justice Archer, concurring, stated that the adoption of the fireman's rule does not foreclose fire fighters and police officers

from bringing a cause of action alleging injuries arising outside the normal, inherent, and foreseeable risks of their professions.

*Kreski,* reversed.

*Reetz,* affirmed.

Justice BOYLE, concurring in part and dissenting in part, stated that as a matter of law a concealed trap door is not a normal, inherent, and foreseeable risk of the profession of police officer. In addition, in *Reetz,* it cannot be said that, as a matter of law, the defendant owed no duty to the plaintiff. The questions of the defendant's knowledge of the danger and opportunity to warn are essentially factual matters. Because the record does not indicate that amendment of the complaint would be futile, the case should be remanded to the trial court for further proceedings.

Justice CAVANAGH, concurring in part and dissenting in part, stated that the fireman's rule should apply only to owners and occupiers of a premises, and not to allegations of negligence independent of ownership and occupancy. Extension of the fireman's rule to include defendants who are not owners or occupiers of a premises is not consonant with policy considerations on which adoption of the rule is based, such as the concern that it is unreasonable to require landowners or occupiers of premises to prepare their property for the arrival of fire fighters and police officers, whose need and appearance usually are unpredictable.

151 Mich App 376; 390 NW2d 244 (1986) reversed.

151 Mich App 150; 390 NW2d 653 (1986) affirmed.

1. NEGLIGENCE — FIRE FIGHTERS — POLICE OFFICERS — DAMAGES.

As a matter of public policy, fire fighters and police officers may not recover for injuries occasioned by negligence which caused the presence of the officers in their professional capacities on premises where the injuries occurred, including injuries arising from the normal, inherent, and foreseeable risks of their chosen professions.

2. NEGLIGENCE — FIRE FIGHTERS — POLICE OFFICERS — DAMAGES.

The rule that fire fighters or police officers may not recover damages for injuries occasioned by negligence which caused their presence in an official capacity on premises where the injury occurred is not limited to owners and occupiers of property.

3. NEGLIGENCE — FIRE FIGHTERS — POLICE OFFICERS — DAMAGES.

The rule that fire fighters or police officers may not recover damages for injuries occasioned by negligence which caused

their presence in an official capacity on premises where the injury occurred is not a license to act with impunity, without regard for an officer's well-being; it only insulates liability for injuries arising out of the inherent dangers of the officer's profession.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs, Barry P. Waldman, George H. Kruszewski,* and *William E. Maxwell, Jr.*), for plaintiff Kreski.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Michael F. Schmidt* and *Maurice A. Borden*), for plaintiff Reetz.

*Mellon & McCarthy, P.C.* (by *Daniel J. McCarthy* and *Steve J. Weiss*), for defendants Modern Wholesale Electric Supply Co., and Weinstein.

*Honigman, Miller, Schwartz & Cohn* (by *James K. Robinson* and *Frederick M. Baker, Jr.*) and *Walter S. Schwartz* for defendant Detroit Edison Company.

*Holahan, Malloy, Maybaugh & Monnich, P.C.* (by *J. Michael Malloy, III,* and *Mary Jo Diegel*), for defendant Tipit, Inc.

Amici Curiae:

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Martin & Schoolmaster* (by *Charles T. McCutcheon, Jr.*); (*Gromek, Bendure & Thomas,* by *Carl L. Gromek* and *Nancy L. Bosh,* of counsel) for Auto Club Group Insurance Company.

*Mulholland & Hickey* (by *Thomas A. Woodley* and *Gregory K. McGillivary*) and *Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Ronald R. Helveston*), for International Association of Fire Fighters, AFL-CIO, CLC.

*Smith, Haughey, Rice & Roegge* (by *Susan J. Bradley*) for Michigan Defense Trial Counsel.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Ronald R. Helveston* and *Alison L. Paton*), for Michigan State Fire Fighters Union.

RILEY, C.J. These consolidated cases present an issue of first impression in Michigan. We are asked to adopt the so-called fireman's rule which precludes fire fighters and police officers from recovering damages for injuries arising out of the risks inherent in their respective professions. We are persuaded that the policy rationales underlying the rule are sound and practical, and thus, adopt the rule for this state.

### FACTS AND PROCEEDINGS

#### KRESKI v MODERN WHOLESALE ELECTRIC

Plaintiff's decedent, Gary Kreski,[1] worked as a fire fighter for the City of Livonia. On April 17, 1983, Kreski died while fighting a fire in a building owned by Edwin Weinstein and occupied by Modern Wholesale Electric Company, when the building's roof and ceiling collapsed upon Kreski without warning.

Plaintiff, individually, and as Gary Kreski's personal representative, brought a wrongful death action against Weinstein and Modern. The complaint, filed in Wayne Circuit Court on April 25, 1983, alleged that negligence on the part of Weinstein and Modern in maintaining the building

---

[1] For the sake of clarity, plaintiff and her decedent will be singularly referred to as plaintiff.

proximately caused Kreski's death.[2] A second count alleged that the building's condition created a nuisance which proximately caused Kreski's death.[3]

Weinstein and Modern moved for summary judgment pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8). The motion was based on the fireman's rule which, defendants stated, provides that "a duty is not owed by the owner or occupant of land upon which a fireman is injured during the discharge of his duty as a fireman." The court denied defendants' motion, and they appealed. The Court of Appeals granted leave to appeal on December 18, 1984.

In the meantime, on July 27, 1984, plaintiff filed an amended complaint, naming The Detroit Edi-

---

[2] Plaintiff alleged that Weinstein and Modern were negligent in the following:

  a) failing to maintain its building in a reasonably safe condition;

  b) failing to hire careful, competent and knowledgeable agents, servants and employees to maintain its building in a reasonably safe condition;

  c) failing to instruct the persons so hired in the proper method and manner of maintaining said building in a reasonably safe condition;

  d) failing to supervise the persons so hired in the proper method and manner of maintaining said building in a reasonably safe condition;

  e) failing to keep the building locked and secure against entry by unauthorized persons;

  f) failing to equip said building with an automatic sprinkler system, or failing to keep said sprinkler system in operation or good working order;

  g) violating each and every one of the above-stated duties.

[3] Plaintiff alleged Weinstein and Modern created a nuisance by

allowing or precipitating said building to be and remain open to trespass and without an adequate automatic sprinkler system, did intentionally and/or negligently create a nuisance and said creation of a nuisance placed all persons lawfully on said premises in a position of peril, plaintiff's decedent in particular.

son Company as a defendant,[4] as well as others not involved in this appeal. Detroit Edison moved for summary judgment, stating that the fireman's rule "bars tort claims by firemen and policemen against persons whose negligence causes the fire or other hazard that injures the officer in the course of his duties." The trial judge denied the motion. Edison sought leave to appeal which was granted January 24, 1985. The Weinstein, Modern, and Edison appeals were then consolidated.

The Court of Appeals affirmed the decision of the trial court as to all defendants, rejecting arguments that Kreski's status on the property was that of a licensee, and that the fireman's rule precluded plaintiff's claim.

With regard to Kreski's status while fighting the blaze, the Court recognized that fire fighters do not fit neatly into the definition of either invitee or licensee. However, the Court concluded:

---

[4] The allegations of negligence consisted of the following:

a) failing to maintain its equipment and power lines in a reasonably safe condition.

b) failing to provide reasonably safe attachment of overhead power lines and equipment.

c) failing to provide reasonably safe installation of overhead power lines, equipment, and poles with respect to property located at 15378 Middlebelt, City of Livonia that being Modern Wholesale Electric Supply Company.

d) failing to hire careful, complaint [sic] and knowledgeable agents, servants and employees to install and maintain power lines and equipment in a reasonably safe manner.

e) failing to instruct the persons so hired in the proper method and manner of installing and maintaining said lines and equipment in a reasonably safe manner.

f) failing to supervise and monitor the persons so hired in the proper method and manner of maintaining said lines and equipment.

g) failing to warn local residents in particular owners of Modern Electric of known dangerous conditions.

h) failing to warn Livonia Fire Department of dangerous condition at said location.

i) violating each and every one of the above stated duties.

[U]nder Michigan law, fire fighters are invitees. The Michigan cases distinguish between situations in which an injured person is on a defendant's premises for his or her own purposes and those in which his or her presence is mutually beneficial to both parties. A fire fighter who comes on a defendant's premises to fight a fire is there for a purpose mutually beneficial to both parties. The occupier of the land is benefited by the fire fighter's services when the fire is extinguished. Thus, the element of economic benefit is present. The landowner or occupier summons help, so the element of invitation is present. . . . It cannot be said that the fire fighter is a mere licensee, on the premises solely for his or her own benefit. [*Kreski v Modern Wholesale Electric Supply Co,* 151 Mich App 376, 381; 390 NW2d 244 (1986).]

Acknowledging that "courts almost universally recognize that a fireman cannot recover when [a] complaint is based on the same conduct that initially created the need for the officer's presence in [an] official capacity," *id.,* 382, the Court declined to adopt a fireman's rule for Michigan. The Court analogized the fire fighting profession to that of a punch-press operator who arguably assumes the risk of losing a hand while working the press, but may nonetheless recover tort damages against a third-party tortfeasor. "In our view, it would be unfair to preclude fire fighters from recovering from third-party tortfeasors when other employees, even those engaged in dangerous occupations, can do so." *Id.,* 386. Finding the remainder of defendants' arguments to be unpersuasive, the Court affirmed the decision of the trial court. Pursuant to Administrative Order No. 1984-2, the Court certified a conflict with the decision in its companion case, *Reetz v Tipit, Inc,* 151 Mich App 150; 390 NW2d 653 (1986). We granted leave to appeal, 426 Mich 864 (1986).

*REETZ v TIPIT, INC*

Plaintiff, Laura Reetz, was employed by the City of Detroit as a police officer. On October 3, 1982, at approximately 10:30 A.M., plaintiff and her partner responded to a reported breaking and entering at the Tipit Lounge which was owned by Sharon Ulrich and managed by John Fontana.

Apparently, a passer-by, Donald Andrus, had noticed a broken window in the lounge and called the police. Plaintiff and her partner entered through the broken window and proceeded to investigate. The interior of the bar was dark, but plaintiff did not turn on her flashlight until she approached a pair of swinging doors. Plaintiff was seriously injured when she fell approximately ten feet to the basement through an open trap door immediately behind the swinging doors. The trap door, when closed, covered the stairs leading to the basement which was used for storage and dressing rooms. There was disputed evidence that Ulrich or Fontana routinely left the trap door open at night to allow a cat to get to the basement. Several officers testified at depositions that, after plaintiff fell, Andrus told them he had warned Ulrich and Fontana about the dangers of leaving the trap door open. At his deposition, Andrus denied making the statements or ever discussing the trap door with Ulrich or Fontana. By affidavit, Ulrich and Fontana both averred that they were present on September 24, 1982, when the bar was closed for vacation, at which time the trap door was shut. Further, neither Ulrich, Fontana, nor anyone following their instructions opened the bar again before plaintiff was injured.

Plaintiff filed her complaint in Wayne Circuit Court on July 22, 1983, alleging that, while on the premises acting within the scope of her employment, plaintiff enjoyed the status of invitee. As

such, plaintiff alleged that defendant had breached its duty of reasonable care owed her as an invitee.[5]

Defendant moved for summary judgment pursuant to both GCR 1963, 117.2(1) and 117.2(3), now MCR 2.116(C)(8) and 2.116(C)(10), arguing that Reetz was a licensee while on the premises and, therefore, was not owed a duty of reasonable care. The trial court agreed and granted defendant's motion. Plaintiff's motion for rehearing and motion for leave to file an amended complaint were denied.

The Court of Appeals affirmed the grant of summary judgment and adopted 2 Restatement Torts, 2d, § 345. That section provides:

"(1) Except as stated in Subsection (2), the liability of a possessor of land to one who enters the land only in the exercise of a privilege, for either a public or a private purpose, and irrespective of the possessor's consent, is the same as the liability to a licensee.

"(2) The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held open to the public, is the same as the liability to an invitee." [Reetz, supra, 154.]

Therefore, since the bar was closed to the public at the time of plaintiff's injuries, plaintiff entered under the status of licensee. The Court cited with approval Nared v Omaha School Dist, 191 Neb 376; 215 NW2d 115 (1974), in which the Nebraska Supreme Court, applying § 345, held that the defendant did not breach a duty to a police officer injured by falling through a false ceiling from a

---

[5] The alleged negligence may be fairly summarized as failure to provide adequate lighting, failure to protect plaintiff from the open, unguarded trap door, failure to warn of the trap door, and failure to inspect the premises.

catwalk. The catwalk was not open to the public; thus, the plaintiff was a licensee.

> When holding that the injured police officer was a licensee, the *Nared* court found no duty breached by the defendant, because there was no evidence that the defendant knew of the condition of the loose board on the catwalk (above the false ceiling) upon which the officer searched for the intruders and there was no evidence that the defendant had any opportunity to warn of the condition. Furthermore, "[n]o agent or employee of the defendant was present on the premises when the accident occurred. It cannot be said that the defendant had any reason to anticipate the presence of the plaintiff in the area." 191 Neb 381. [*Reetz, supra,* 157.]

In addition, the Court of Appeals affirmed the trial court's denial of plaintiff's motion to amend her complaint. We granted leave to appeal, 426 Mich 865 (1986).

### THE FIREMAN'S RULE

The precedential authority supporting the fireman's rule[6] is impressive, and deeply rooted in common law. When faced with the question

---

[6] The fireman's rule is actually misnamed. Many of the cases discussing the rule present situations where police officers were injured in the line of duty. No state adopting the fireman's rule has declined to apply it to police officers. See *Flowers v Rock Creek Terrace,* 308 Md 432; 520 A2d 361 (1987); see also *Garcia v South Tuscon,* 131 Ariz 315; 640 P2d 1117 (1982); *Walters v Sloan,* 20 Cal 3d 199; 142 Cal Rptr 152; 571 P2d 609 (1977); *Pottebaum v Hinds,* 347 NW2d 642, 643 (Iowa, 1984); *Hannah v Jensen,* 298 NW2d 52 (Minn, 1980); *Steelman v Lind,* 97 Nev 425; 634 P2d 666 (1981); *Berko v Freda,* 93 NJ 81, 87; 459 A2d 663 (1983); *Pearson v Canada Contracting,* 232 Va 177; 349 SE2d 106 (1986). In directly facing the issue whether to apply the fireman's rule to police officers, the *Berko* court stated:

> The similarity between firefighters and police officers compels the extension of the rule to the latter. Both are paid to

whether to adopt the rule, courts have overwhelmingly been in favor of doing so.[7] The fireman's rule is based on practicability and common sense. While the rule may have slightly different permutations among the states, its most basic formulation is that a fire fighter or police officer may not recover damages from a private party for negligence in the creation of the reason for the safety officer's presence.

The rationales underlying the fireman's rule are several, and sometimes the borderline between one blurs with the next. However, that in no way undermines the basic soundness of the rule. Indeed, as noted by the California Supreme Court, "[i]t is unnecessary to attempt to separate the legal theories or to catalog their limitations." *Walters v Sloan,* 20 Cal 3d 199, 204; 142 Cal Rptr 152; 571 P2d 609 (1977).

The rule found its origin nearly one hundred years ago in the case of *Gibson v Leonard,* 143 Ill 182; 32 NE 182 (1892). In *Gibson,* as well as most of the early cases involving fire fighters, the court analyzed the issue of liability on the basis of the traditional status categories of entrants upon the property of another—invitee, licensee, or tres-

confront crises and allay dangers created by an uncircumspect citizenry, a circumstance that serves to distinguish firefighters and police from most other public employees. Citizens summon police and firefighters to confront danger. Governmental entities maintain police and fire departments in anticipation of those inevitable physical perils that burden the human condition, whereas most public employment posts are created not to confront dangers that will arise but to perform some other public function that may incidentally involve risk. In keeping with this distinction many jurisdictions have extended the rule to the police. [*Berko, supra,* 86-87.]

We agree with the above authorities, and hold that the fireman's rule applies equally to police officers as well as firemen.

[7] The only exception is the Oregon Supreme Court which abrogated its fireman's rule in *Christensen v Murphy,* 296 Or 610; 678 P2d 1210 (1984).

passer. The *Gibson* court determined that the plaintiff fireman was a licensee, and, therefore, the property owner only owed him a duty to avoid inflicting wilful, wanton, or intentional injuries. Following *Gibson,* the early cases generally held that firemen on the premises in the course of their duties were licensees. See anno: *Liability of owner or occupant of premises to fireman coming thereon in discharge of his duty,* 11 ALR4th 597.

Courts eventually became disenchanted with the inherent difficulties of fitting fire fighters into a specific category. Essentially, invitee status requires invitation and mutual benefit for the occupant and entrant. The entrant must be on the premises for a purpose directly or indirectly related to the owner's or occupant's business. *Preston v Sleziak,* 383 Mich 442, 450; 175 NW2d 759 (1970), citing with approval 2 Restatement Torts, 2d, § 332. However, fire fighters and police officers enter the property not by invitation, express or implied, but by public right, or "privilege conferred by legal authority . . . ." Prosser & Keeton, Torts (5th ed), § 61, pp 429-430. The owner or occupant may not prevent a fire fighter from entering the premises in the line of duty, and, in fact, may incur criminal liability for attempting to do so.[8] Further, the owner or occupant may not control the actions of the fire fighter once he is on the premises. Thus, fire fighters do not cleanly fit into the invitee category.

Neither is licensee status a completely satisfactory category into which to categorize fire fighters. A licensee enters the premises not by invitation, but by permission of the owner or occupant. The licensee's presence is permitted by the possessor of the land, but is not related to the "purpose or

[8] MCL 109.5, 750.241; MSA 5.1922, 28.438.

interest of the possessor of the land." Prosser, *supra,* § 60, p 412. Again, since entry is by right rather than permission, the fire fighter is not strictly a licensee.[9]

These inherent limitations in accurately fitting fire fighters into the traditional landowner liability context have caused courts to look beyond the concept of the entrant's status as a rationale for the fireman's rule.[10] Instead, most recent decisions adopt the rule on the basis of primary assumption of risk and public policy.

The seminal case of *Krauth v Geller,* 31 NJ 270; 157 A2d 129 (1960), signaled the change of rationale from premises liability to assumption of risk and public policy. In *Krauth,* the plaintiff fireman was injured while fighting a fire in a house under construction. The builder had not yet constructed a railing for an interior balcony and stairwell. While on the balcony, the plaintiff mistook layers of smoke for the stairs and fell. Apparently, the

[9] Some courts have abolished status categories, *Rowland v Christian,* 69 Cal 2d 108; 70 Cal Rptr 97; 443 P2d 561 (1968), or have determined that safety officers are best categorized as sui generis. See *Krauth v Geller,* 31 NJ 270; 157 A2d 129 (1960). This development in no way impedes application of the fireman's rule. See *Walters,* n 6 *supra,* 204. We agree that safety officers do not precisely fit within the status of invitee or licensee, and decline to adopt the fireman's rule on the basis of the common-law status categories.

[10]

   Much has been written with respect to the duty owed to and the status of a fireman who enters private property pursuant to his public employment. He *is not a trespasser, for he* enters pursuant to public right. Although it is frequently said he is a licensee rather than an invitee, it has been correctly observed that he falls within neither category, for his entry does not depend upon permission or invitation of the owner or occupier, nor may they deny him admittance. Hence his situation does not fit comfortably within the traditional concepts. . . . His status being *sui generis,* justice is not aided by appending an inappropriate label and then visiting consequences which flow from a status artificially imputed. [*Krauth,* n 9 *supra,* 272-273.]

plaintiff had been on the premises previously and was aware of the absence of the railing. Further, since the defendant was not on the scene, no liability would arise for failure to warn of a hidden condition. Thus "[n]o breach of duty could be found with respect to the condition of the premises." *Id.,* 275. The plaintiff, however, alleged negligence for causing the fire. Expressing disenchantment with deciding the case on the basis of the traditional status categories, the New Jersey Supreme Court affirmed a judgment for the defendant, finding no duty owed to the plaintiff to refrain from negligently starting the fire. The court explained:

> The rationale of the prevailing rule is sometimes stated in terms of "assumption of risk," used doubtless in the so-called "primary" sense of the term and meaning that the defendant did not breach a duty owed, rather than that the fireman was guilty of contributory fault in responding to his public duty. . . . Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the

consequences of the inherent risks of the calling. [*Id.*, 273-274.]

California also premises its fireman's rule in part on the assumption of risk doctrine.

[T]he fireman's rule is based on a principle as fundamental to our law today as it was centuries ago. The principle is not unique to landowner cases but is applicable to our entire system of justice—one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby. [*Walters, supra,* 204.]

Accord *Lipson v Superior Court,* 31 Cal 3d 362, 371; 182 Cal Rptr 629; 644 P2d 822 (1982) ("A fireman assumes only those hazards which are known or can reasonably be anticipated at the site of the fire"). See also *Steelman v Lind,* 97 Nev 425, 427-428; 634 P2d 666 (1981) (public safety officers assume normal risks inherent in their employment).

Plaintiff in *Kreski* argues that assumption of risk has been abolished in Michigan and, therefore, the doctrine cannot form the basis for adopting the fireman's rule. In that regard, plaintiff is partially correct.

Historically, assumption of risk was incorrectly viewed as a unitary concept, but in fact is comprised of two related components. This Court, in *Felgner v Anderson,* 375 Mich 23; 133 NW2d 136 (1965), discussed those components which consist of primary and secondary assumption of risk. Secondary assumption of risk had been employed as an affirmative defense analogous to contributory negligence. It involved a situation in which the plaintiff voluntarily encountered a known risk without manifesting an assent to relieve the defendant of any duty of care owed the plaintiff. *Felg-*

*ner* abolished assumption of risk used in this sense.

> Assumption of risk should not again be used in this State as a substitute for, or as a supplement to, or as a corollary of, contributory negligence . . . . The traditional concepts of contributory negligence are more than ample to present that affirmative defense to establish negligent acts. [*Felgner, supra,* 56.]

Primary assumption of risk is not technically an affirmative defense, as it involves a situation where the defendant does not owe a duty of care to the plaintiff. *Felgner* restricted primary assumption of risk to "cases between employee and employer for injuries incurred in the course of employment and where the statutory bar of the workmen's compensation act . . . is not applicable and in cases where it is claimed there has been an express contractual assumption of risk . . . ." *Id.* In other words, primary assumption of risk involves a circumstance where the plaintiff agrees in advance to relieve the defendant of a duty of care owed the plaintiff. Under *Felgner,* therefore, primary assumption of risk is still viable in Michigan.[11]

---

[11] The viability of primary assumption of risk is evidenced by *Carter v Mercury Theater Co,* 146 Mich App 165; 379 NW2d 409 (1985). In *Carter,* the plaintiff was employed as a security guard by a private security service. While on duty at the Mercury Theater, the plaintiff was shot and wounded by two patrons. The plaintiff brought a negligence action against the theater for failing to prevent the assailants from reentering the theater after they had been ejected. The trial court denied the defendant's motion for summary judgment, but the Court of Appeals reversed that decision. The Court held that the plaintiff had been injured while performing the very duty for which he had been hired—to provide security. The Court quoted from *Turner v Northwest General Hosp,* 97 Mich App 1, 3-4; 293 NW2d 713 (1980), that " '[i]t would be ironic to hold defendant . . . liable to an employee of the very security guard company it hired for protection.' " *Carter, supra,* 167.

Plaintiff in *Kreski* argues that primary assumption of risk cannot provide the basis for adopting a fireman's rule because there was no employment relationship between plaintiff and defendants. The City of Livonia, as a legal entity, employed plaintiff, not the taxpayers. Livonia hired, trained, paid, and directed plaintiff while he was on the job. Therefore, while taxpayers are the intended beneficiaries of plaintiff's employment, there is no support for the proposition that taxpayers were plaintiff's employer.

The Kansas Supreme Court declined to premise its adoption of a fireman's rule on an assumption of risk theory, for the same argument that plaintiff advances. *Calvert v Garvey Elevators, Inc,* 236 Kan 570, 574-575; 694 P2d 433 (1985). "We would be required to adopt the legal theory that an individual taxpayer, as occupant of the premises, is the employer of the fire fighter employee. We do not believe that assumption of the risk can be carried to that extent."[12]

On the other hand, several states base their fireman's rule on assumption of risk, despite having abolished the doctrine in the secondary sense.[13] For example, *Armstrong v Mailand,* 284 NW2d 343 (Minn, 1979), noted that secondary assumption of risk had been earlier held to be an issue of comparative negligence. However,

> primary assumption of the risk is still available to relieve a defendant of his duty to plaintiff; therefore, there still is validity in the . . . rule which

[12] However, the court did adopt a fireman's rule for policy reasons. *Calvert, supra,* 574-575.

[13] The Kentucky Supreme Court recognized that even if assumption of risk, strictly speaking, is not appropriate, the "spirit" of the doctrine is. "It is our opinion that the principle of assumed risk is applicable, at least in spirit if the label be considered in some respects inappropriate." *Buren v Midwest Industries, Inc,* 380 SW2d 96 (Ky, 1964).

relieves a landowner of his duty to firemen except for a duty to warn of hidden dangers. The . . . rule . . . can be rephrased as follows: A fireman assumes, in the primary sense, all risks incident to his firefighting activities except for hidden risks which are known by the landowner. [*Id.,* 349.][14]

While we find that primary assumption of a risk is still viable in Michigan, we decline to adopt the fireman's rule on the basis of the doctrine. However, we do not do so for the reason argued by plaintiff—the lack of direct employment relationship between taxpayers and fire fighters. The public policy rationales advanced in favor of the rule are more than sufficient to support it. Thus, it is unnecessary to determine whether a direct employment relationship between plaintiff and defendant is required to support a defense of primary assumption of risk.[15]

The policy arguments for adopting a fireman's rule stem from the nature of the service provided by fire fighters and police officers, as well as the relationship between these safety officers and the public they are employed to protect.

[14] The Minnesota Legislature statutorily abolished the fireman's rule in that state. See *Lang v Glusica,* 393 NW2d 181, 183, n 1 (Minn, 1986).

[15] Recall that *Felgner* retained primary assumption of risk in two situations: in cases between employer and employee for injuries incurred during the course of employment where the workers' compensation act is not a bar, and where an express contractual assumption of risk is claimed. *Felgner, supra,* 56. However, notice that in both *Turner* and *Carter,* the plaintiffs were not employees of the defendant, but were employed by independent security agencies contracting with the defendants to provide security. Admittedly, private security guards are somewhat distinguishable from fire fighters in that fire fighters have complete control in the manner that they perform their duties, while security guards are under more control by the entity contracting with their employer. Still, the positions are roughly analogous. However, since assumption of risk is not the basis of adopting a fireman's rule, it is unnecessary to determine the exact requirements of primary assumption of risk.

It is beyond peradventure that the maintenance of organized society requires the presence and protection of fire fighters and police officers. The fact is that situations requiring their presence are as inevitable as anything in life can be. It is apparent that these officers are employed for the benefit of society in general, and for people involved in circumstances requiring their presence in particular. The court in *Calvert* noted that "[f]ire fighters enter on the premises to discharge their duties. Fire fighters are present upon the premises, not because of any private duty owed the occupant, but because of the duty owed to the public as a whole." *Calvert, supra,* 576.

The public hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations. Usually, especially with fires, negligence causes the occasion for the safety officer's presence.

> The [fireman's] rule developed from the notion that taxpayers employ firemen and policemen, at least in part, to deal with future damages that may result from the taxpayers' own negligence. To allow actions by policemen and firemen against negligent taxpayers would subject them to multiple penalties for the protection. [*Steelman, supra,* 427.]

In the same vein, the Iowa Supreme Court stated:

> [S]ince government entities employ and train firefighters and policemen, at least in part, to deal with those hazards that may result from the actions or inaction of an uncircumspect citizenry, it offends public policy to say that a citizen invites

private liability merely because he happens to create a need for those public services. [*Pottebaum v Hinds,* 347 NW2d 642, 645 (Iowa, 1984).]

See *Flowers v Rock Creek Terrace,* 308 Md 432, 447; 520 A2d 361 (1987):

[W]e hold that, as a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance. This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public.

The Court of Appeals in *Kreski* rejected this policy argument, agreeing with plaintiff and the dissent in *Walters* that "this argument proves too much." *Kreski, supra,* 385-386. See *Walters, supra,* 20 Cal 3d 207 (Tobriner, J., dissenting). Other occupations involve risk, but no court has adopted a rule of nonliability for injuries arising out of the inherent dangers of those occupations. The Court of Appeals stated, therefore, that "adoption of the fireman's rule would make firefighters second-class citizens with fewer rights than those enjoyed by other employees." *Kreski, supra,* 387.

What this argument fails to take into account is the fundamental difference between the function of safety officers and that of other occupations peripherally involving danger. The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, fire fighters, and society which distinguishes safety officers from other employees. Thus, safety

officers are not "second-class citizens," but, rather, are "different" than other employees.[16]

Several other policy arguments are cited by courts to support the fireman's rule.[17] These arguments are all related to the foundational policy rationale that the purpose of safety professions is to confront danger and, therefore, the public should not be liable for damages for injuries occurring in the performance of the very function police officers and fire fighters are intended to fulfill. Like the court in *Pottebaum, supra,* 645, we do not ascribe to all of the policy arguments advanced in support of a fireman's rule, but are persuaded that several are valid.

Fire fighters and police officers often arrive at unpredictable times and may enter portions of the premises not open to the public. Prosser & Keeton, *supra,* § 61, p 431. Generally, the occasion for their presence is an emergency. *Id.* While it is true that situations arise in which the need for fire fighters or police officers are predictable, their appearance at a specific time or place is not. *Pearson v Canada Contracting Co, Inc,* 232 Va 177, —; 349 SE2d 106, 111 (1986). Thus, it is an unreasonable burden on landowners to require them to prepare their premises for the arrival of police officers or fire fighters.

> A person who climbs in through a basement window in search of a fire or a thief does not expect any assurance that he will not find a bulldog in the cellar, and he is trained to be on guard for any such general dangers inherent in the profession. [Prosser & Keeton, *supra,* § 61, p 432.]

Accord 5 Harper, James & Gray, Torts (2d ed),

[16] See also n 6, the passage quoted from *Berko,* discussing the distinction between safety officers and other employees in dangerous professions.

[17] See *England v Tasker,* — NH —; 529 A2d 938 (1987) (discussing policy rationales).

§ 27.14, p 262 (duty to make premises reasonably safe for police officers or fire fighters—a severe burden in light of infrequency and unpredictability of visits); *Court v Grzelinski,* 72 Ill 2d 141, 148; 379 NE2d 281 (1978) ("[T]he 'fireman's rule' rests not merely upon a recognition that certain risks are normally expected in fire fighting, but upon a policy consideration limiting the duty of landowners or occupiers").

Additionally, workers' compensation benefits are available to police officers and fire fighters injured in the course of their employment. This fairly spreads the cost of these injuries to the public as a whole rather than individual property owners. *Giorgi v Pacific Gas & Electric Co,* 266 Cal App 2d 355; 72 Cal Rptr 119 (1968); *Pottebaum, supra,* 645-646; *Calvert, supra,* 574-575; *Phillips v Hallmark Cards,* 722 SW2d 86 (Mo, 1986); *Pearson, supra,* 111. See also *Krauth, supra* (risk placed on public body employing fire fighter).

It has been argued that liability insurance is a better way to spread the risk of loss.

> Moreover, although some courts have been apprehensive that the abolition of the fireman's rule will necessarily place an unreasonable burden on a single negligent tortfeasor (see, e.g., *Krauth v Geller, supra* [31 NJ 274-275], 157 A2d 129, 131), these decisions appear to ignore the significant role that insurance presently plays in spreading the risk of loss among policyholders. Many fires arise on business premises or as a result of commercial activities . . . and such commercial ventures will normally carry liability insurance that would cover a fireman's tort action. In the case of such commercial enterprises I can perceive no justification for failing to treat the negligent injury of a fireman as . . . much a "cost of doing business" as the negligent injury of any other person in the course of the commercial operation.

In addition, comprehensive "homeowners" policies available to the average homeowner or renter commonly contain personal liability coverage that would shield a negligent individual from the full brunt of the fireman's claim. [*Walters, supra,* 216 (Tobriner, J., dissenting).]

Putting aside the question whether the availability of liability insurance is a proper basis for a rule of law, we reject this argument, as have all the courts discussing it. See *Giorgi, supra,* 360 ("the reach of the tax collector is both broader and more persuasive than that of the premium taker"); *Pottebaum, supra,* 645-646 ("although we are aware of the widespread existence of liability insurance, we believe these risks are more effectively and fairly spread by passing them onto the public through the government entities that employ firefighters and police officers"); *Berko v Freda,* 93 NJ 81, 83-84; 459 A2d 663 (1983) (rejecting the argument that prevalence of insurance required reëxamination of *Krauth, supra*).

The costs and risks of injuries are most fairly borne by the intended beneficiaries of the services of safety officers. Further, while many fires may arise on business premises, the obverse is also true. Many fires arise on nonbusiness premises, with the owner or occupant having no avenue to pass along the cost of liability insurance as a cost of doing business.

As a result of examining the policy rationales supporting the fireman's rule, we are persuaded that considerations of fairness and public policy compel us to adopt the rule for Michigan. However, we must clarify that we are not attempting to delineate the precise parameters of the rule in this opinion. Several exceptions involving factual situations not presented here have developed in the states employing a fireman's rule.

For example, the alleged acts and omissions in the instant cases all occurred prior to plaintiffs' arrivals. There are no allegations of wrongdoing or negligence after plaintiffs were on the scene. Further, neither plaintiff has alleged negligence rising to the level of wilful, wanton, or intentional misconduct. In both cases, the incidents took place when the premises were closed. Therefore, we are not presented with a situation in which the injuries occurred when the buildings were open to the public for business.

Next, the building owners or occupiers were not on the premises at the time of the incidents, or even alleged to have known of plaintiffs' presence. Thus, there are no allegations that the owners misled plaintiffs regarding the condition of the buildings or the nature of the activities carried on inside. Similarly, there is no allegation that defendants had a present ability to warn of danger on the premises. Neither are there allegations that the fire in *Kreski* was intentionally set or was the product of illegal activities.

All of these scenarios have been faced by courts in fine tuning their fireman's rules to best balance the underlying rationales with the interest of allowing recovery when those rationales are not implicated.[18] By adopting a fireman's rule on the basis of public policy, we also will be able to flexibly address the different fact patterns as they are presented.

In sum, fire fighters and police officers are different than other employees whose occupations may peripherally involve hazards. Safety officers are employed, specially trained, and paid to confront dangerous situations for the protection of society. They enter their professions with the certain

[18] See *Gail v Clark,* 410 NW2d 662 (Iowa, 1987).

knowledge that their personal safety is at risk while on duty. Property owners and occupiers cannot reasonably predict visits by safety officers or control their activities while on the premises. Finally, injuries suffered by safety officers while in the course of their employment are compensable by workers' compensation, thereby spreading the cost and risk to the public. Thus, as a matter of public policy, we hold that fire fighters or police officers may not recover for injuries occasioned by the negligence which caused their presence on the premises in their professional capacities. This includes injuries arising from the normal, inherent, and foreseeable risks of the chosen profession. With this rule in mind, we turn to the present cases.

## KRESKI v MODERN WHOLESALE

Plaintiff maintains that adopting a fireman's rule does not necessarily bar her claim against either defendant. The counts against Modern and Weinstein allege negligence in the repair and maintenance of the premises, which resulted in the roof collapsing. Plaintiff argues that she has not alleged negligence in causing the fire, but, rather, in the maintenance of the premises. Plaintiff also argues that, since the alleged negligence is unrelated to the cause of the fire, it was unforeseeable and, thus, not inherent in fire fighting.

We disagree. The scope of the rule adopted today includes negligence in causing the incident requiring a safety officer's presence and those risks inherent in fulfilling the police or fire fighting duties. Of course, this does not include all risks encountered by the safety officer. The fireman's rule is not a license to act with impunity, without regard for the safety officer's well-being. The fire-

man's rule only insulates a defendant from liability for injuries arising out of the inherent dangers of the profession.

We agree with plaintiff that the acts alleged, for the most part, do not pertain to the cause of the fire. However, several courts addressing cases in which the plaintiff alleged negligence relating to the condition of the premises have held that the risk was inherent in the safety professions, and, thus, within the fireman's rule.

For instance, in *Flowers, supra,* the plaintiff fell down an open elevator shaft while attempting to evacuate tenants from a smoke-filled lobby on the twelfth floor of an apartment building. The plaintiff brought suit alleging, inter alia, negligence in the installation of the elevator and failure to warn of the open elevator shaft.

The court held that the fireman's rule precluded the plaintiff's action stating:

> All of these allegations reflect the theory that [the defendants] owed a duty to Flowers to maintain a reasonably fireproofed elevator system and to warn of potential malfunctions of the elevators in the event of a fire. Although these are not allegations of negligence in the creation of the fire that originally brought the firemen to the apartment building, an accident involving an open elevator shaft nevertheless is within the range of the anticipated risks of firefighting. . . . It is common knowledge that stairwells are to be used instead of elevators in case of fires; trained firemen must know of the risk that a fire may cause an elevator to malfunction. Moreover, an open elevator shaft is not a "hidden danger" of which firemen must be warned. In Flowers's declaration, he alleged that he was evacuating tenants from a "hallway of a building where there was heavy smoke." An open elevator shaft concealed by the smoke of the fire is not a hidden danger in the sense of an unreason-

able danger that a fireman could not anticipate upon attempting to perform his firefighting duties. [*Flowers, supra,* 451-452.]

See *Williams v Levitt,* 213 NJ Super 604; 517 A2d 1242 (1986) (police officer investigating activation of burglar alarm was injured when he tripped in a hole in defendant's yard; policy reasons of fireman's rule preclude suit); cf. *Buren v Midwest Industries, Inc,* 380 SW2d 96, 98-99 (Ky, 1964) (condition of premises causing fire to spread rapidly not actionable).

Several courts have included the potential for structural collapse as an inherent risk of fire fighting. See *Lipson, supra,* 371 ("[s]moke, flames, and the collapse of a burning wall, ceiling, or floor are typical risks normally associated with a fireman's occupation"); *Romedy v Johnston,* 193 So 2d 487, 491 (Fla App, 1967) (["fire fighters] face the risk of injury from exposure to fire, smoke, and collapsing structures"); *Aravanis v Eisenberg,* 237 Md 242, 252, n 2; 206 A2d 148 (1965) (" 'There are certain risks inherent in fire fighting: smoke, flame, and the like. The collapse of a floor, ceiling or wall of a burning building, without more, is a hazard a fireman must ordinarily anticipate.' ") (quoting *Jackson v Velveray Corp,* 82 NJ Super 469, 475; 198 A2d 115 [1964]).

We agree that the potential for structural collapse is an inherent risk of fire fighting, and one which fire fighters are trained to anticipate. Like the open elevator shaft in *Flowers,* it is common knowledge that burning buildings collapse, and the risk of that occurrence cannot be termed hidden or unanticipated. Thus, plaintiff has no cause of action for the collapse of the roof.

Plaintiff also argues that a fireman's rule would not preclude suit against Edison, since it was not

the owner or occupant of the premises. Plaintiff argues that the policy rationale underlying the rule, to prevent an undue burden on property owners, has no application where the defendant is not the owner or occupier of the property.

It is true that a few states have limited application of their fireman's rule to the context of landowners and occupiers. See *Grzelinski, supra; Hawkins v Sunmark Industries, Inc,* 727 SW2d 397, 400 (Ky, 1986). The *Hawkins* court explained:

> Thus the present-day basis for continuing the Fireman's Rule does not relate to his now rejected status as a mere licensee. Its present viability relates to the peculiar status of the fireman as a part of fire prevention whose existence and presence at the fire is needed in the public interest, limited to those who can reasonably expect to benefit from his presence. As such, the Fireman's Rule is still needed to protect those owners and occupiers whose negligence initiates a fire.
>
> Thus, for reasons of public policy, our rule is that firemen are required to assume the ordinary risks of their employment, a dangerous occupation, to the extent necessary to serve the public purpose of fire control, and this means providing the Fireman's Rule as a defense for those who are the owners or occupiers of the property he is employed to protect.

Other courts, however, have declined to limit the fireman's rule to landowners or occupiers. See *Pottebaum, supra* (fireman's rule not based on premises liability theory because it would be unfairly limited to landowners or occupants but not to others whose actions injure safety officers elsewhere); *Flowers, supra* (rule adopted for reasons of public policy because premises liability theory would not encompass injuries caused by nonowners or occupants).

*Giorgi, supra,* is similar to the instant case. In *Giorgi,* the defendant's negligent maintenance of an electric pole and an attached wire apparently caused a fire. This negligence occurred some distance from the area where several fire fighters were injured or killed. The court, however, held that the fireman's rule precluded the plaintiff's suit because the alleged negligence was that which caused the fire.

We agree that the fireman's rule should not be limited to a landowner/occupier context.[19] While the rule is partially based on protecting landowners and occupiers from an undue burden of keeping their premises safe for fire fighters and police officers, that is simply one component of the rule. The major underpinning of the rule is that the job of safety officers is to confront risks generally caused by negligence, and thus, as a matter of policy, the safety officers may not recover damages for injuries arising out of negligence in causing the reason for their presence. The risk is the same whether the negligence causing the fire occurs on the premises or, as here, some distance away. Indeed, even the *Hawkins* court found the fireman's rule applicable to the party causing the fire in that case, despite the fact that he was not the owner or occupant of the premises, stating that

[19] The dissent in *Grzelinski, supra,* 152-153, argues persuasively against limiting the fireman's rule to a landowner/occupier context.

The majority appears to be willing to apply the fireman's rule only in the "limited context of landowner/occupier liability." This implies that the majority would not permit a fireman to recover for injuries he receives in extinguishing a fire in my automobile which I caused by negligently pouring gasoline on the hot manifold if the automobile is parked in my driveway, but that he would be permitted to recover if my automobile is parked in the street. This appears to me not only to be extremely illogical but also to possibly present some constitutional questions.

"[t]he liability claim against him is premised on his part in initiating the fire. He is among the people that fire protection is intended to benefit." *Id.*, 400. The same is true for defendant Edison, whose negligence apparently is alleged to have caused the fire in this case.

### *REETZ v TIPIT, INC*

The parties in *Reetz* argued, and the Court of Appeals decided the case, on the basis of premises liability. As the fireman's rule adopted today is based on public policy, the analysis to be employed is not determined by status, but by whether the underlying rationales of the fireman's rule require preclusion of plaintiff's claim.

The negligence complained of was an open trap door, located directly behind two swinging doors, through which plaintiff fell. Clearly this was not the reason for plaintiff's presence on the premises, as she was investigating a burglary. There is no allegation that negligence created the need for plaintiff's services. Thus, this case is slightly different than most fireman's rule cases. Generally, the occasion requiring assistance from a safety officer is caused by negligence.

Plaintiff here could make essentially the same argument that the plaintiff in *Kreski* made: that the fireman's rule does not preclude her suit since the negligence complained of was not the reason for her presence on the premises. However, again, we reject this argument because plaintiff's injury falls within those risks inherent to police work.

This case is similar to *Williams, supra,* in which a police officer was investigating a suspected burglary call on the defendant's property. The plaintiff stepped in a hole in the defendant's yard,

sustaining injuries. The court held that the fireman's rule barred the plaintiff's action.

> A police officer responding to a call, any call, can never be certain of what hazards he may encounter. This fact compelled our Courts to extend the "Fireman's Rule" to policemen. . . . Were it to be otherwise, any citizen seeking the aid of the police force may be expected to ensure that no condition even remotely giving rise to liability exists before he calls upon them to render assistance. [*Id.*, 607.]

In *Pearson, supra,* the court held that a fireman injured in a fall through a hole in the floor in the defendant's building could not recover damages. The court was persuaded by two of the policy rationales underlying the rule adopted today. First, that the plaintiff would be able to collect workers' compensation benefits, thereby spreading the cost of the injury to the public. Second, that safety officers enter the premises at unforeseeable times and locations, and that not applying the fireman's rule would require the owner or occupant to fulfill an unreasonable burden of care.

The policy rationales for the fireman's rule adopted today preclude plaintiff's action. As noted in *Williams, supra,* police officers cannot be certain what dangers surround them when investigating a burglary. They have been trained to expect a variety of contingencies and to deal with those contingencies as they arise. It was plaintiff's duty to investigate the burglary, despite the inherent dangers. In performance of her duty, plaintiff took the premises as she found them, with no representations being made regarding their safety. Thus,

while unexpected, it cannot be said that the risk here was not inherent in police work.[20]

Plaintiff further appealed the denial of her motion to amend her complaint. Since we have determined that plaintiff's claim is precluded by the fireman's rule, amendment would be futile. Therefore, we affirm the denial of plaintiff's motion to amend the complaint.

### CONCLUSION

For the public policy reasons stated above, we adopt for Michigan a fireman's rule. The claims of both plaintiffs fall within the ambit of the rule and are thus precluded.

Therefore, the decision of the Court of Appeals in *Kreski* is reversed as to all defendants. The decision of the Court of Appeals in *Reetz* is affirmed. As both actions were precluded by the rule adopted today, it is unnecessary to determine the degree of care owed safety officers on the premises in the line of duty.

LEVIN, BRICKLEY, ARCHER, and GRIFFIN, JJ., concurred with RILEY, C.J.

ARCHER, J. (*concurring*). I signed the majority opinion and concur because it does not foreclose fire fighters and police officers from bringing a cause of action which includes but is not limited to

---

[20] In addition, it would be unfair to hold defendant liable. Neither Ulrich nor Fontana were aware of plaintiff's presence on the premises. In addition, they both averred by affidavit that they were present on September 24, 1982, when the bar was closed for vacation, at which time the door was shut. Further, neither Ulrich, Fontana, nor anyone acting under their instructions opened the bar again prior to plaintiff being injured. Thus, even if Ulrich or Fontana did open the trap door as plaintiff has alleged, it would be unreasonable to hold them liable under these circumstances, when they had no way of predicting at a particular time whether a safety officer would be present.

allegations of wrongdoing or negligence after they are on the scene; alleged negligence rising to the level of wilful, wanton, or intentional misconduct; a situation in which injuries occurred when the buildings were open to the public for business; allegations that the owners misled the plaintiffs regarding the condition of the buildings or the nature of the activities carried on inside; allegations that defendants had a present ability to warn of dangers on the premises; or allegations that defendants intentionally set a fire or that the fire was a product of an illegal activity. See *ante,* p 371.

BOYLE, J. (*concurring in part and dissenting in part*). I agree with the rationale and result in *Kreski v Modern Wholesale Electric.* I do not agree, however, that a concealed trap door is, as a matter of law, a "normal, inherent, and foreseeable risk[ ] of the chosen profession." (*Ante,* p 372.) Nor can I agree, as a matter of law, that in these circumstances, the defendant owed no duty to the plaintiff. The questions of defendant's knowledge of the danger and opportunity to warn, *Clark v Corby,* 75 Wis 2d 292; 249 NW2d 567 (1977), are essentially factual matters. Because I am not convinced on this record that amendment of the complaint would be futile, *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 213 NW2d 134 (1973), I would remand to the trial court for further proceedings.

CAVANAGH, J. (*concurring in part and dissenting in part*). I join in the majority opinion for the reasons expressed in Justice ARCHER's concurrence, but only to the extent that the adoption of the fireman's rule in Michigan applies to owners and occupiers of the premises in question. I dissent

from the majority's extension of the fireman's rule
to defendants, such as Detroit Edison in *Kreski v
Modern Wholesale,* who are not owners or occupi-
ers of the premises. The adoption of the rule is
primarily based on the concern that it is unreason-
able to require landowners or occupiers to prepare
their premises for the arrival of fire fighters and
police officers, whose need and appearance is usu-
ally unpredictable. This and other policy consider-
ations which justify protecting landowners and
occupiers from liability are absent when consider-
ing independent negligent causes. I would thus
affirm the trial court's denial of Detroit Edison's
motion for summary judgment in *Kreski, supra.*