GIBBONS v CARAWAY

MARIIN v FLEUR, INC

Docket Nos. 102190, 102191, 102388. Argued March 4, 1997 (Calendar
    Nos. 1-2). Decided July 22, 1997. Rehearing denied in *Gibbons*, 456
    Mich 1201.

Martin W. Gibbons and Janice Gibbons, for themselves and as next
    friends of Timothy and Erin Gibbons, minors, brought an action in
    the Oakland Circuit Court against Linda F. Caraway, Mound Steel &
    Supplies, Inc., and Elmer Simko, for injuries sustained by Martin
    Gibbons, a Bloomfield Township police officer, while directing traf-
    fic at the scene of an accident. Gibbons was struck by a vehicle,
    driven by Caraway and owned by Simko, that Simko had leased to
    Mound Steel. Defendants' motions for summary judgment on the
    grounds that the suit was barred by the fireman's rule and that
    Simko was exempt from liability because he was engaged in the
    business of leasing motor vehicles were denied, Jessica R. Cooper,
    J. The Court of Appeals, CORRIGAN, P.J., and CAVANAGH and L. C.
    ROOT, JJ., reversed in an unpublished memorandum opinion, hold-
    ing that the claims were barred by the fireman's rule, reasoning
    that the plaintiff was on duty when he was struck and that the risk
    of being struck by a negligent motorist is inherent in the activity of
    directing traffic. The Court further found that there are no excep-
    tions to the fireman's rule (Docket Nos. 163560, 163605). The plain-
    tiffs appeal.

David P. Mariin, a police officer for the City of Gladstone, brought an
    action in the Delta Circuit Court against Fleur, Inc., doing business
    as Wally's Bar, and against William Tardiff, alleging that, while
    Mariin was off duty and dressed in civilian clothes, Tardiff, whom
    he had arrested several years previously, assaulted him at the bar,
    causing him to fall and injure his shoulder. The court, Dean J. Ship-
    man, J., granted summary disposition for Fleur, Inc. The Court of
    Appeals, GRIFFIN, P.J., and SAWYER and R. L. ZIOLKOWSKI, JJ., reversed,
    reasoning that the fireman's rule was not applicable because the
    plaintiff was not on duty (Docket No. 168486). The defendant
    appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice MALLETT and Justice KELLY, and an opinion by Justice BOYLE, joined by Justice BRICKLEY, the Supreme Court *held:*

The fireman's rule, precluding liability for injuries arising out of the dangers inherent in a police officer's or fireman's profession, does not bar the plaintiffs' claims in these cases.

1. The fireman's rule was adopted on the basis of public policy, and subsequent development of case law has not delineated its precise parameters. While the scope of the rule includes negligence in causing an incident requiring a safety officer's presence and those risks inherent in fulfilling police or firefighting duties, all risks encountered by a safety officer are not included. The notion that there can be no exceptions to the rule is an erroneous reading of the case law.

2. In *Gibbons*, the fireman's rule does not apply. In *Mariin*, the fireman's rule is inapplicable because the plaintiff's performance of his duty as a police officer relative to Tardiff was fully and completely discharged two years before the incident occurred and is too attenuated to support a conclusion that the injury stems directly from a police function. Also, the plaintiff's receipt of worker's compensation benefits is not dispositive of the issue of the applicability of the fireman's rule.

Justice CAVANAGH, joined by Chief Justice MALLETT and Justice KELLY, would further hold in *Gibbons*, that the risks inherent in the fulfillment of the officer's duties did not include all possible risks that could arise in that situation. The circumstances of the allegedly negligent operation of the automobile by Caraway preclude any ruling as a matter of law that the officer's claims are barred by the fireman's rule. Further, defendant Simko is not immune from liability under the civil liability act because, on the basis of the record, he was not engaged in the business of leasing motor vehicles.

Justice BOYLE, joined by Justice BRICKLEY, concurring, stated that under the particular facts of this case, the fireman's rule does not bar a claim for damages for injuries caused by the subsequent wrongdoing of a third party uninvolved with the original act, where the wrongdoing resulted from wanton, reckless, or grossly negligent behavior. In regard to carelessness or ordinary negligence, however, the fireman's rule bars the claim.

The fireman's rule bars tort claims by safety officers against persons whose negligence created the reason for the officer's presence and for injuries stemming from the normal risks of the officer's profession. While the alleged reckless, wanton, and grossly negligent conduct of defendant Caraway is not shielded from liability

under the rule, mere negligence or carelessness on the part of a third party, which takes place after the safety officer arrives at the scene of the original incident and that is unconnected to the original incident, does not, under the particular facts of this case, create an exception to the fireman's rule. The decision of the Court of Appeals in *Gibbons* should be reversed.

Justice WEAVER, concurring in the result only, stated that the fireman's rule should be limited to premises liability, i.e., to defendants who are owners or occupiers of land. Such a limitation is consonant with the rule's original purpose of preventing an undue burden on property owners. Accordingly, the rule should not be applied in *Gibbons* or *Mariin*.

Justice RILEY, concurring in part and dissenting in part, stated that in *Gibbons*, the officer was exercising his duty as a police officer while directing traffic when he was injured. To refuse to admit that this injury arose from the normal risks inherent in his profession is to ignore one of the basic reasons Michigan adopted this common-law rule. In *Mariin*, the officer was not performing the very function that a police officer is intended to fulfill when he was injured. Consequently, the trial court erred when it concluded that the fireman's rule barred the action.

*Gibbons*, affirmed in part, reversed in part, and remanded.

*Mariin*, affirmed and remanded.

208 Mich App 631; 528 NW2d 218 (1995) affirmed.

*Raymond L. Krell, P.C.* (by *Derek A. Hurt*), for plaintiffs Gibbons.

*Stupak & Bergman, P.C.* (by *Martin F. Fittante*, on behalf of *Frank A. Stupak, Jr.*), for plaintiff Mariin.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*) for defendants Caraway, Simko, and Mound Steel & Supplies, Inc.

*McGinty, Jakubiak, Frankland, Hitch & Henderson, P.C.* (by *Vittorio E. Porco*), for defendant-appellant Fleur, Inc.

Amici Curiae:

*Frank A. Guido* and *Peter W. Cravens* for Police

Officers Association of Michigan.

*William J. Johnson* for National Law Enforcement Officers Rights Center.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *Lawrence P. Schneider*), for Michigan State Police Troopers Association, Inc.

CAVANAGH, J. In these consolidated cases, we are required to further explicate the scope of the fireman's rule. In *Gibbons*, we are also required to determine whether the exemption from liability afforded by § 401(2) of the civil liability act, MCL 257.401(2); MSA 9.2101(2), applies to defendant Elmer Simko.

I

*GIBBONS v CARAWAY*

The incident at issue in this case occurred on November 12, 1990. Plaintiff, a Bloomfield Township police officer, was dispatched to the scene of an accident that had occurred at the intersection of Adams Road and the entrance/exit ramp of I-75. During the relevant period, plaintiff was directing traffic[1] while other on-scene personnel were sweeping up debris that had scattered across the four lanes of Adams Road. Plaintiff was standing near the center line in the northbound left-hand lane.

Defendant Caraway was driving a 1990 Lincoln Town Car owned by defendant Simko, which he had

---

[1] Apparently, plaintiff's traffic-directing activity was supplemental to the still-operative traffic light at the intersection.

leased to defendant Mound Steel & Supplies, Inc.[2] She was driving southbound on Adams Road and, as she approached the intersection, she swerved (for an as yet undetermined reason)[3] and struck plaintiff.

Plaintiff filed suit against all three defendants. His claim against defendant Caraway alleged that she operated the vehicle in a wanton, reckless, careless, negligent, or grossly negligent manner. Plaintiff also alleged that defendants Simko and Mound Steel & Supplies were liable on the basis of their ownership of the vehicle.

Following discovery, all defendants moved for summary disposition pursuant to MCR 2.116(C)(10), claiming that plaintiff's suit was barred by the fireman's rule as set forth by this Court in *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347; 415 NW2d 178 (1987), and *Woods v City of Warren*, 439 Mich 186; 482 NW2d 696 (1992). Defendant Simko also argued that he was exempt from liability, pursuant to MCL 257.401(2); MSA 9.2101(2), because he was engaged in the business of leasing motor vehicles. The circuit court denied all motions.

In an unpublished memorandum opinion,[4] the Court of Appeals reversed the circuit court, holding that plaintiff's claims were barred by the fireman's rule. Citing this Court's opinion in *Woods*, the Court of Appeals reasoned that plaintiff was on duty when he was struck by the automobile driven by defendant

---

[2] Defendant Simko is the owner of Mound Steel & Supplies, Inc. Defendant Caraway, who is Simko's daughter, is an employee of Mound Steel & Supplies, Inc.

[3] There is conflicting deposition testimony on this and other factual issues, which will be resolved by the trial court on remand.

[4] Issued January 20, 1995 (Docket Nos. 163560, 163605).

Caraway, that the risk of being struck by a negligent motorist is inherent in the activity of directing traffic, that there are no exceptions to the fireman's rule, and that the circumstances of this case fall within the rationale of the fireman's rule. The Court of Appeals did not address defendant Simko's alleged exemption from liability.

We granted leave, 450 Mich 964 (1996), and now reverse.

*MARIIN v FLEUR, INC*

On February 27, 1991, plaintiff, a police officer for the City of Gladstone, was socializing and drinking beer with friends at Wally's Bar.[5] It is undisputed that plaintiff was off duty and dressed in civilian clothes. At some point, William Tardiff, whom plaintiff had arrested several years previously, entered the bar and recognized plaintiff. Tardiff, whose animosity toward plaintiff and other Gladstone police officers had been publicly expressed on numerous occasions, verbally threatened plaintiff and then grabbed plaintiff by the shirt. As plaintiff attempted to get away from Tardiff, he fell backwards over a bar stool and injured his shoulder, which injury rendered plaintiff unable to work for a period of six months.

Plaintiff filed an action against Tardiff and Fleur, Inc. Defendant Fleur, Inc., moved for summary disposition pursuant to MCR 2.116(C)(8) and (10),[6] and

---

[5] Defendant Fleur, Inc., owns and operates Wally's Bar.

[6] At the motion hearing, plaintiff's counsel informed the court that Tardiff had been served but had not responded, and that a default against him had been filed. Plaintiff's counsel averred that Tardiff's whereabouts were unknown. In any event, Tardiff was not a relevant party in this case in the Court of Appeals, nor is he a relevant party in this Court.

the motion was granted by the circuit court.[7]

The Court of Appeals reversed the circuit court. 208 Mich App 631; 528 NW2d 218 (1995). It reasoned that the fireman's rule is not applicable in this case in light of

> the basic formulation of the fireman's rule, namely, that there cannot be liability for injuries arising out of the inherent dangers of the profession where the cause of the injury arises from the reason for the officer's presence. In the case at bar, it might be said that it is an inherent danger of law enforcement that an arrestee may harbor ill will against the arresting officer and, at some point thereafter, attack the officer. However, what is missing in the present case is a showing that the officer's presence at the scene of the injury was occasioned by his duties as a police officer. That is, plaintiff was not at Wally's Bar because he was answering a police call. Rather, he was socializing there while off duty. [*Id.* at 636.]

We granted leave, 450 Mich 964 (1996), and now affirm.

II

In *Kreski, supra,* this Court adopted a fireman's rule "on the basis of public policy," 429 Mich 371, expressly "declin[ing] to adopt the fireman's rule on the basis of the doctrine [of assumption of risk]." *Id.* at 365. We explained that "[t]he policy arguments for adopting a fireman's rule stem from the nature of the service provided by firefighters and police officers, as well as the relationship between these safety officers

---

[7] The trial court did not specify the basis of its grant of summary disposition, but our review of the motion hearing transcript shows that factual evidence in addition to the pleadings was considered. Therefore, we view the motion as having been granted pursuant to MCR 2.116(C)(10).

and the public they are employed to protect," *id.*, and we approvingly noted the public policy rationales adopted by three of our sister jurisdictions, which provide:

> "The [fireman's] rule developed from the notion that taxpayers employ firemen and policemen, at least in part, to deal with future damages that may result from the taxpayers' own negligence. To allow actions by policemen and firemen against negligent taxpayers would subject them to multiple penalties for the protection. [*Steelman v Lind*, 97 Nev 425, 427; 634 P2d 666 (1981).]

> \*   \*   \*

> "[S]ince government entities employ and train firefighters and policemen, at least in part, to deal with those hazards that may result from the actions or inaction of an uncircumspect citizenry, it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services. [*Pottebaum v Hinds*, 347 NW2d 642, 645 (Iowa, 1984).]

> \*   \*   \*

> "[A]s a matter of public policy, firemen and police officers generally cannot recover for injuries attributable to the negligence that requires their assistance." [*Flowers v Rock Creek Terrace*, 308 Md 432, 447; 520 A2d 361 (1987), quoted in *Kreski*, 429 Mich 366-367.]

In *Kreski*, we also noted other policy arguments relied on by other jurisdictions, such as "the purpose of safety professions is to confront danger," 429 Mich 368, and "workers' compensation benefits are available to police officers and fire fighters injured in the course of their employment." *Id.* at 369. We ultimately adopted a fireman's rule in light of all these policy rationales, without giving dispositive weight to any one (or any combination) of them. The most impor-

tant overarching principle to be drawn from the *Kreski* opinion is contained in our statement, "[W]e are not attempting to delineate the precise parameters of the rule in this opinion. Several exceptions involving factual situations not presented here have developed in the states employing a fireman's rule." *Id.* at 370. As examples of factual situations considered by other courts in allowing exceptions to their states' fireman's rules, we noted the following: cases where there are "allegations of wrongdoing or negligence after plaintiffs [i.e., safety officers] were on the scene"; cases where there are allegations of "negligence rising to the level of wilful, wanton, or intentional misconduct"; and cases "in which the injuries occurred when the [premises] were open to the public for business." *Id.* at 371. To clarify further that we did not envision the opinion as a bright-line statement of the precise parameters of the fireman's rule we were adopting, we stated: "By adopting a fireman's rule on the basis of public policy, we also will be able to flexibly address the different fact patterns as they are presented." *Id.*

We next addressed the application of the fireman's rule in *Woods, supra.* In that opinion we dealt with two aspects of the fireman's rule that are directly relevant to the cases at bar: whether there are, or can be, any exceptions to the fireman's rule, and the scope of the risks for which the fireman's rule bars a safety officer's tort claims.

In response to the plaintiff's argument that *Kreski* established several exceptions to the fireman's rule, we stated:

> It did not. The *Kreski* Court did indicate that the rationale of the fireman's rule might not apply in every circum-

stance involving an injury to a safety officer. It suggested,
for instance, that buildings open to the public might justify
a different result and that injuries resulting from intentional
torts might also justify disregarding the fireman's rule. The
Court did not, however, establish that those circumstances
prevented application of the fireman's rule.[8] It merely used
them to indicate its willingness to apply the rule flexibly as
circumstances required. That the *Kreski* Court chose this
language to avoid rigid and formalistic adjudication does
not mean it intended to defeat application of the fireman's
rule when otherwise justified.

[8] Of course, this statement should not be taken to prevent appli-
cation of these "exceptions" when *Kreski*'s fundamental policy
rationale is inapplicable.

[*Woods*, 439 Mich 194.]

This passage represents the *Woods* Court's recogni-
tion that *Kreski* did not establish any bright-line, cate-
gorical exceptions to the fireman's rule, but that
indeed there can be individual exceptions in appropri-
ate situations.

With regard to the scope of the risks encompassed
by the fireman's rule, the *Woods* Court addressed the
plaintiff's argument relative to the following excerpt
from *Kreski*:

"[A]s a matter of public policy, we hold that fire fighters
or police officers may not recover for injuries occasioned
by the negligence which caused their presence on the prem-
ises in their professional capacities. This includes injuries
arising from the normal, inherent, and foreseeable risks of
the chosen profession." [*Woods*, *supra* at 194, quoting
*Kreski* at 372.]

The plaintiff's argument was that the first sentence is
a necessary predicate for the applicability of the sec-
ond sentence. In dismissing this argument, we noted
that the plaintiff had overlooked a subsequent, rele-

vant statement in the *Kreski* opinion: " 'The scope of the rule . . . includes negligence in causing the incident requiring a safety officer's presence *and* those risks inherent in fulfilling the police or fire fighting duties.' " *Woods, supra* at 195, quoting *Kreski* at 372 (emphasis added by the *Woods* Court). This additional quotation from the *Kreski* opinion was sufficient under the specific facts of *Kreski* (and *Reetz*, its companion case), but it is insufficient for the case at bar. Immediately following the sentence quoted by the *Woods* Court were the following two sentences, which are of great significance in the factual situations presented by the instant cases: "Of course, this does not include all risks encountered by the safety officer. The fireman's rule is not a license to act with impunity, without regard for the safety officer's well-being." *Kreski, supra* at 372.

With this fuller understanding of the principles underlying the application of the fireman's rule, we turn now to the cases at bar.

III

*GIBBONS v CARAWAY*

A

In concluding that defendants were entitled to summary disposition, the Court of Appeals noted that "[t]here is no dispute that Officer Gibbons was on duty directing traffic around an accident scene when he was struck by an automobile driven by defendant Caraway," and, citing *Woods*, concluded that "[t]here are no exceptions to the [fireman's] rule . . . ." Slip op at 1.

As already explained, this Court has not established any categorical exceptions to the fireman's rule. But

the notion underlying the Court of Appeals ruling (i.e., that there can be no exceptions to the rule) is an erroneous reading of the *Kreski* and *Woods* opinions, as evidenced by our review of those cases in part II.

In *Woods*, the plaintiff police officer, Sergeant Woods, spotted a car that had been reported stolen and gave chase. The driver of the stolen car attempted to outrun Sergeant Woods, who engaged in high-speed pursuit. Ultimately, both drivers crashed into the same house because of icy road conditions. Sergeant Woods suffered injuries to his pelvis and hip. 439 Mich 189.

In engaging in the high-speed pursuit of a stolen vehicle, a pursuit he was compelled to undertake in the performance of his duty, Sergeant Woods exposed himself to certain dangers. Among those dangers was the risk of losing control of his vehicle, particularly under unsafe road conditions such as glaze ice.[8] There were no allegations of wrongdoing or negligence after Sergeant Woods was on the scene, nor were there any allegations of negligence rising to the level of wilful, wanton, or intentional misconduct.

In the case at bar, the risks inherent in Officer Gibbons' fulfillment of his police duties did not include all possible risks that could arise in that situation. Because "[t]he fireman's rule is not a license to act with impunity, without regard for the safety officer's well-being," *Kreski* at 372, the allegedly negligent

---

[8] In this regard, Sergeant Woods' situation was very much like that of the plaintiff police officer in *Reetz* (the companion case to *Kreski*). In the *Reetz* portion of the opinion, we stated: "It was plaintiff's duty to investigate the burglary, despite the inherent dangers. In performance of her duty, plaintiff took the premises as she found them, with no representations being made regarding their safety." *Kreski*, 429 Mich 378, quoted in *Woods*, 439 Mich 191, n 4.

operation of her automobile by defendant Caraway, which occurred after Officer Gibbons was on the scene and which is alleged to have been wanton, reckless, careless, negligent, or grossly negligent, precludes any ruling as a matter of law at this stage of the proceedings[9] that Officer Gibbons' claims are barred by the fireman's rule. In light of the relevant principles underlying our adoption of the fireman's rule, we would hold that application of the rule under these circumstances is unjustified.

B

We now turn briefly to defendant Elmer Simko's claim that he is exempt from liability under MCL 257.401(2); MSA 9.2101(2), which provides:

> A person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days is not liable at common law for damages for injuries to either person or property resulting from the operation of the leased motor vehicle.

There is no dispute that the leases at issue here all satisfy the "for a period that is greater than 30 days" requirement of the statute. The question presented by this issue is whether defendant Simko is "in the business of leasing motor vehicles." We would hold that he is not.

As a general matter, we note that when the Legislature was considering the act[10] that added subsection 2

---

[9] We reiterate that the relevant facts are in dispute. Therefore, in the context of this (C)(10) motion, we view the facts in the light most favorable to the nonmoving party, i.e, plaintiff.

[10] The relevant bills were HB 4685 and HB 4721.

to § 401 of the civil liability act, the stated concern was the requirement of the Insurance Code then in effect that owners of motor vehicles were required to carry certain no-fault insurance coverages. It was argued that banks, credit unions, and other financial enterprises were unduly burdened by this requirement, resulting in the inability of these financial institutions to engage in the business of leasing motor vehicles, which activity, it was argued, they needed in order to compete against the subsidized financing arrangements provided by the automobile manufacturing companies. Ultimately, two tie-barred bills were enacted as 1988 PA 125, which, relevant to this appeal, exempted from ownership liability those who are engaged in the business of leasing motor vehicles.

We make no attempt in this opinion to set forth a definitive and all-encompassing standard by which to determine what constitutes being engaged in the business of leasing motor vehicles. We merely hold that an individual owner of a business who leases three cars to that business over a period of seventeen years is not engaged in the business of leasing motor vehicles.[11]

*MARIIN v FLEUR, INC*

A

The further refinement of the fireman's rule set forth in part II is not necessary for our decision in this case. Under any formulation of a fireman's rule, we would hold that such a rule is inapplicable to the facts presented here because plaintiff's performance

---

[11] We decide this issue as a matter of statutory interpretation—i.e., as a question of law—and therefore find it unnecessary to address defendant Simko's arguments relying on MCR 2.116(G)(4) and (H)(1).

of his duty as a police officer relative to William Tardiff was fully and completely discharged some two years before the incident in issue occurred.

If we were to adopt defendant Fleur's argument that the attack on Officer Mariin was directly related to his status as a police officer, we would expand the scope of the fireman's rule far beyond any justifiable policy rationale.

We would hold that the connection between Officer Mariin's initial arrest of William Tardiff and Tardiff's injury-causing attack on Officer Mariin is too attenuated to support a conclusion that "the injury stems directly from [the] officer's police functions," as required by *Kreski* and *Woods*. See *Woods*, 439 Mich 193.

B

Defendant Fleur also argues that because plaintiff received worker's compensation benefits, which required a finding that plaintiff's injury arose out of and in the course of his employment, MCL 418.301; MSA 17.237(301), his claims must be barred by the fireman's rule. We disagree.

The "course of employment" standard is much broader than the requirement of the fireman's rule that for a claim to be barred it must stem directly from the performance of police or firefighting duties in the context of the relevant incident. The two standards are not mutually exclusive, as defendant would have it. Therefore, we would hold that plaintiff's receipt of worker's compensation benefits is not dispositive of the issue of the applicability of the fireman's rule.

IV

In *Gibbons*, we would reverse the decision of the Court of Appeals in regard to the fireman's rule, and we would affirm the decision of the circuit court in regard to defendant Simko's claim of exemption from ownership liability. In *Mariin*, we would affirm the decision of the Court of Appeals. And in both cases, we would remand the matters to the trial court for proceedings consistent with this opinion.

MALLETT, C.J., and KELLY, J., concurred with CAVANAGH, J.

BOYLE, J. (*concurring*). I concur in the conclusion of the lead opinion that the scope of the risks encompassed by the fireman's rule does not extend to Gibbons' claims. The fireman's rule can fairly be limited to afford a cause of action for injuries sustained as a result of the alleged subsequent gross negligence of an independent third party unconnected to the situation that brought the officer to the scene. Although I recognize this approach limits the rationale of *Woods v City of Warren*, 439 Mich 186; 482 NW2d 696 (1992), the limitation is appropriate because it affords a remedy for independent and intervening acts that injure an officer while preserving the core rationale of the rule. The logical consequence of defining the rule to extend to "the normal risks of the safety officer's profession" would mean that even injuries like those allegedly sustained by plaintiff Mariin would be noncompensable although there is no direct relationship between the act that caused the injury and the act that occasioned the officer's presence. *Id.* at 196. I write separately to state my belief that, under the particular facts of this case, the fireman's rule does not

bar a claim for damages for injuries caused by the subsequent wrongdoing of a third party uninvolved with the original act, where the wrongdoing resulted from wanton, reckless, or grossly negligent behavior. In regard to carelessness or ordinary negligence, however, the fireman's rule bars the claim.

I

When a police officer steps into the roadway to direct oncoming traffic around an accident scene, the officer runs the risk of being struck by a vehicle. This is a normal, inherent, and foreseeable risk of the profession just as it was foreseeable that a disgruntled person would attack Officer Mariin. However, unless we conclude that by virtue of his profession an officer assumes the risk of injury from every irresponsible act, a line must be drawn. Officer Gibbons did not assume the risk of being injured by a subsequent wanton, reckless, or grossly negligent act of a third party by virtue of the fact that he was dispatched to the scene of an automobile accident anymore than he assumed the risk of being intentionally run down by a vindictive driver with a score to settle who happened to pass by as the officer was directing traffic. Therefore, I agree that injury from the alleged wanton, reckless, or grossly negligent behavior of defendant Caraway, where Caraway was uninvolved with the original act of negligence and where her alleged misconduct occurred after the officer arrived at the scene, was not a "normal, inherent, and foreseeable risk[] of the chosen profession." *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347, 372; 415 NW2d 178 (1987).

Limiting this exception to acts of wanton, reckless, or grossly negligent misconduct also appropriately balances the policy concerns underlying the rule. Emergency situations and conditions such as those Officer Gibbons encountered are replete with distractions. At this particular accident site, during evening rush hour traffic, one police cruiser and two tow trucks were at the scene with emergency lights flashing, two vehicles involved in the original accident were disabled, debris was being swept from the roadway, and Officer Gibbons was standing with a flashlight in the intersection directing traffic in conjunction with an operating traffic light.[1] Faced with these circumstances, it is not unusual for traffic to come to a sudden stop or for cars to swerve to avoid obstructions in the roadway. Although arguably negligent, such activity is a foreseeable risk of an officer's profession and, indeed, is often the very reason for which officers are dispatched to the scene of an accident. Officers are trained at taxpayer expense to handle these very situations. Under the circumstances of this case, public policy considerations support shielding citizens from a damage claim for injuries suffered by an officer as a result of the carelessness or ordinary negligence of an individual. They do not support shielding citizens from damage claims for injuries arising from their reckless, wanton, or grossly negligent conduct.

This result also addresses the contention that the fireman's rule places officers at a disadvantage when

---

[1] For the purposes of this appeal, we will assume that the facts as alleged in plaintiff's complaint and in deposition testimony are true. Any disputes regarding factual issues should be resolved by the trial court on remand.

compared to the ordinary citizen. It is true that the ordinary citizen has a remedy for injuries inflicted through ordinary negligence as well as gross negligence. The average citizen may also be sued for injuries caused through simple or gross negligence. In contrast, police officers are immunized from liability by state statute unless their conduct is grossly negligent, MCL 691.1407; MSA 3.996(107), and are not liable under federal law for injuries caused by ordinary or gross negligence that does not involve a violation of a statute or a clearly established constitutional right.[2] Moreover, it has not been disputed here that even where liability is individually imposed, the governmental employer actually pays the judgment. Thus, while the nature of the police officer's employment exposes him to risks for which compensation in damages is not available, the Legislature has determined that the nature of the employment justifies shielding the employee against exposure to liability for negligently inflicted injury. Arguments regarding adjustments to the rights and responsibilities of police and safety officers should be directed to the Legislature.

---

[2] See Michigan's governmental immunity act, MCL 691.1407; MSA 3.996(107) (liability against government employees will be barred unless their conduct is grossly negligent); *Nemeckay v Rule*, 894 F Supp 310 (ED Mich, 1995) (government officials performing discretionary functions are shielded from civil liability where their conduct does not violate clearly established statutory or constitutional rights); *Lewellen v Metropolitan Gov't of Nashville & Davidson Co, Tenn*, 34 F3d 345 (CA 6, 1994) (injury caused by negligence does not constitute deprivation of a constitutionally protected interest for purposes of 42 USC 1983); *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 428; 487 NW2d 106 (1992) (negligence does not amount to deliberate indifference for purposes of 42 USC 1983); *Smith v Dep't of Public Health*, 428 Mich 540; 410 NW2d 749 (1987), aff'd *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989) (a state official sued in his official capacity for retroactive relief is not a "person" for purposes of a damage suit under § .1983).

To summarize, although I believe Officer Gibbons is barred from seeking damages for the carelessness or ordinary negligence of defendant Caraway, I also believe that the same public policy considerations that supported the adoption of the fireman's rule do not support insulating Caraway from liability for her alleged wanton, reckless, or grossly negligent behavior. Since the rule is not "a license to act with impunity,"[3] it should not shield individuals from the consequences of their reckless acts. Rather, the rule was designed, in part, to protect citizens from incurring multiple costs for those acts that themselves created the need for public protection services.[4]

II

Michigan's fireman's rule bars tort claims by safety officers against persons whose negligence created the reason for the officer's presence and for injuries stemming from the normal risks of the officer's profession. *Kreski, supra* at 372; *Woods, supra* at 196. While the alleged reckless, wanton, and grossly negligent conduct of defendant Caraway is not shielded from liability under the rule, mere negligence or carelessness on the part of a third party, which takes place after the safety officer arrives at the scene of the original incident and which is unconnected to the original incident, does not, in my opinion, under the particular facts of this case, create an exception to the fireman's rule. Consistent with this opinion, I would reverse the Court of Appeals decision in regard to the fireman's rule in *Gibbons*. In all other respects, I concur with the lead opinion.

---

[3] *Kreski, supra* at 372.

[4] *Id.* at 366.

BRICKLEY, J., concurred with BOYLE, J.

WEAVER, J. (*concurring in the result only*). I concur with the result of the lead opinion. I agree that we should reverse the Court of Appeals in *Gibbons v Caraway*,[1] affirm the Court of Appeals in *Mariin v Fleur, Inc*,[2] and remand both matters to the trial court for further proceedings. However, I write separately because I would limit the fireman's rule to premises liability. I believe such a limitation is consonant with the rule's original purpose of preventing an undue burden on property owners.

In *Kreski v Modern Wholesale Electric Supply Co*, this Court provided a history of the development of the fireman's rule.[3] The *Kreski* Court noted that firefighters and police are "different" and do not fit neatly into any of the three traditional premises liability categories.[4] Some of these differences include: (1) firemen and police officers often enter an owner or occupier's land at unexpected times or places,

---

[1] Docket Nos. 163560, 163605, issued January 20, 1995.

[2] 208 Mich App 631; 528 NW2d 218 (1995).

[3] 429 Mich 347; 415 NW2d 178 (1987). In particular, this Court traced the rule's origin to *Gibson v Leonard*, 143 Ill 182; 32 NE 182 (1892), an Illinois case in which the plaintiff firefighter was classified as a licensee, one of the three traditional premises liability categories, which also includes invitees and trespassers. Several jurisdictions have analyzed the duty owed a firefighter by an owner or occupier of land within these three categories. See *Kreski*, *supra* at 359, citing anno: *Liability of owner or occupant of premises to fireman coming thereon in discharge of his duty*, 11 ALR4th 597. Post-*Gibson*, courts in other jurisdictions have vacillated considerably regarding in which category firefighters should be classified. *Id.*

Although *Kreski* did not envision a categorical rule, this Court held that, "fire fighters or police officers may not recover for injuries occasioned by the negligence which caused their presence on the premises in their professional capacities." *Id.* at 372.

[4] *Id.* at 367-368.

(2) they often enter portions of the premises not open to the public, and (3) generally, their presence is mandated by emergency.[5] In light of these factors, *Kreski* concluded it would be unreasonably burdensome to require landowners to maintain their premises in a suitable manner for the potential arrival of firemen and police officers.[6]

However, when *Kreski* adopted the fireman's rule, the scope of its holding reached beyond owners and occupiers of land. In *Kreski,* the plaintiff firefighter was precluded from suing the electric company that was allegedly responsible for the fire that caused the roof to collapse on him.[7] The electric company was neither an occupier nor an owner of the premises.[8] This Court further expanded the rule in *Woods v City of Warren*[9] to encompass public spaces.

While on the Court of Appeals, I was bound to follow the law established by this Court in *Kreski* and expanded in *Woods.*[10] However, I would now, given the opportunity, limit application of this judicially created rule to the facts in *Reetz v Tipit, Inc,* the companion case to *Kreski,* thus tailoring the rule's appli-

---

[5] *Id.* at 368.

[6] *Id.*

[7] *Id.* at 374-376.

[8] *Id.*

[9] 439 Mich 186; 482 NW2d 696 (1992) (applying the firemen's rule to bar a tort lawsuit arising from injury sustained by a police officer in a public street).

[10] See *Stehlik v Johnson,* 204 Mich App 53; 514 NW2d 508 (1994) (WEAVER, P.J., dissenting) (applying the fireman's rule established by this Court); 206 Mich App 83; 520 NW2d 633 (1994) (rehearing) (adopting reasoning similar to the WEAVER dissent for the majority opinion).

cation to defendants who are owners or occupiers of land.[11]

Again, I believe such a limitation is consistent with the rule's original and most compelling purpose of preventing the imposition of an undue, unreasonable burden on possessors of land. Accordingly, I concur with the result of the lead opinion because it does not apply the fireman's rule to the facts in *Gibbons* or *Mariin*.

RILEY, J. (*concurring in part and dissenting in part*). Because I do not agree with the decision of the plurality and concurrence that the fireman's rule does not apply to Officer Martin Gibbons' action against an allegedly grossly negligent driver in *Gibbons v Caraway*, I respectfully dissent. However, I concur with the decision of this Court to affirm the Court of Appeals decision in *Mariin v Fleur* holding that the fireman's rule did not bar Officer David Mariin's cause of action.

### ANALYSIS

#### I. FIREMAN'S RULE

As adopted from the common law, the fireman's rule prevents police officers and firefighters from recovering for injuries sustained during the course of their duty. *Woods v City of Warren*, 439 Mich 186, 190; 482 NW2d 696 (1992), citing *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347, 358; 415 NW2d

---

[11] In *Reetz*, the plaintiff police officer, responding to a breaking and entering call, entered a closed bar through the window. The premises were dark when the plaintiff unknowingly stepped into a trap door, fell ten feet below, and sustained serious injuries. *Reetz* illustrates the unique circumstances in which firefighters and police officers arrive on premises as this Court noted in *Kreski* and as discussed. *Kreski, supra* at 355.

178 (1987). As the plurality notes, see *ante*, pp 320-321, we first adopted the common-law rule in *Kreski* in 1987 on the basis of considerations of fairness and good policy. *Id.* at 370. We stated that the rule in Michigan bars recovery for two types of injuries:

> [1] Those deriving from the negligence causing the safety officer's presence and [2] those stemming from the normal risks of the safety officer's profession. [*Woods, supra* at 196.]

In *Woods*, we relied on *Kreski* by concluding that the scope of the rule included not only injuries that arose from the negligence that caused the incident requiring the safety officers' presence, but also applied to injuries arising from the normal, inherent, and foreseeable risks of the chosen profession. See *Woods, supra* at 195, citing *Kreski, supra* at 372.

The plurality recognized this point, but notes that, in *Kreski*, we limited it by stating that not all risks that a safety officer encounters are subject to this rule. See CAVANAGH, J., *ante*, pp 323-324, citing *Kreski, supra* at 372.[1] However, we further clarified that the fireman's rule "only insulates a defendant from liability for injuries arising out of the *inherent* dangers of the profession." *Kreski, supra* at 373 (emphasis added). Thus, we limited the rule to those risks that were inherent in the profession. Contrary to the conclusion of the plurality, see CAVANAGH, J., *ante*, pp 325-326, I fail to see how the danger of injury from a neg-

---

[1] The plurality quotes from *Kreski, supra* at 372:

> Of course, this does not include all risks encountered by the safety officer. The fireman's rule is not a license to act with impunity, without regard for the safety officer's well-being.

ligent or grossly negligent driver for a police officer directing traffic at the scene of an accident is not inherent in the risks that the profession presents. The concurrence by Justice Boyle similarly relies on this fiction that the risk of injury for Officer Gibbons was not inherent in his work as a police officer. See Boyle, J., *ante*, p 330.[2]

Moreover, under the facts of *Gibbons*, the fundamental rationale of the rule as articulated in both *Kreski* and *Woods* is applicable. The preeminent reason we deny a police officer or firefighter the right to bring an action in the two types of circumstances identified in *Woods, supra* at 196, is that these professionals should expect to encounter these dangers and should not seek redress from members of the public when they are injured while confronting them:

> [*T*]*he foundational policy rationale* [*is*] *that the purpose of safety professions is to confront danger and, therefore, the public should not be liable for damages for injuries occurring in the performance of the very function police officers and fire fighters are intended to fulfill.* [*Kreski, supra* at 368 (emphasis added); see also *Woods, supra* at 190-191.]

---

[2] The concurrence by Justice Boyle argues as follows at *ante*, p 330:

I agree [with the plurality] that [the] injury from the alleged wanton, reckless, or grossly negligent behavior of defendant Caraway, where Caraway was uninvolved with the original act of negligence and where her alleged misconduct occurred after the officer arrived at the scene, was not a "normal, inherent, and foreseeable risk[] of the chosen profession."

Because the fireman's rule was adopted by this Court as a common-law rule, if we decide to rework the doctrine, we should not be reluctant to expressly redefine when the rule applies, rather than attempt to fit these facts into the preexisting rules established by *Kreski* and *Woods*.

This is the most basic rationale. *Woods, supra* at 190-191. There is a fundamental difference between a safety officer and other occupations that involve danger:

> The very nature of police work and fire fighting is to confront danger. The purpose of these professions is to protect the public. It is this relationship between police officers, fire fighters, and society which distinguishes safety officers from other employees. [*Kreski, supra* at 367.]

The analytic focus in examining whether a danger is unique to the police officer is whether *the injury stems directly from the officer's police functions. Woods, supra* at 193.[3]

## II. *GIBBONS v CARAWAY*

In *Gibbons*, the police officer's injury resulted from an accident. Defendant Linda Caraway was allegedly guilty of gross negligence as well as simple negligence in her failure to observe blinking lights, by speeding, and ignoring the traffic directions. Officer Gibbons was acting in his capacity as a police officer while he was directing traffic, and the danger of injury was inherent in his duty to protect the safety of others after a traffic accident. Because the public should not be liable for damages for injuries that occur during the performance of a police officer's duties, see *Kreski, supra* at 368, the Court of Appeals rightly concluded that Officer Gibbons' cause of

---

[3] Because we did not define the precise parameters of the rule and recognized that there were exceptions to the rule in *Kreski*, we stated that we would address different possible exceptions as they arise where the underlying policy is not applicable. See *Woods, supra* at 194, n 8; *Kreski, supra* at 371. This point is not relevant to Officer Gibbons' case because the underlying policy applies to the facts of his case.

action was barred by the fireman's rule. On the basis
of the considerations of policy and fairness that per-
suaded us to adopt the common-law fireman's rule, I
would conclude that the fireman's rule bars Officer
Gibbons' claim of negligence. I would affirm the
Court of Appeals decision.

### III. MARIIN v FLEUR, INC

In *Mariin*, the question is whether the hazard to
Officer Mariin arose from the *normal* risks of a police
officer's profession. See *Woods, supra* at 193, 196;
*Kreski, supra* at 372. In other words, we must deter-
mine if the officer's injury was directly related to his
police functions. *Woods, supra* at 193. Under the facts
of *Mariin*, I do not believe that the injury arose from
the exercise of Officer Mariin's police function. As the
Court of Appeals noted, Officer Mariin was off duty,
not in uniform, and not exercising his authority as a
police officer when he was injured while socializing
at a bar. 208 Mich App 631, 636-637; 528 NW2d 218
(1995).[4] He was not performing the very function that

---

[4] The Court of Appeals reasoned:

[W]e believe it is important to return to the basic formulation of
the fireman's rule, namely, that there cannot be liability for injuries
arising out of the inherent dangers of the profession where the
cause of the injury arises from the reason for the officer's presence.
In the case at bar, it might be said that it is an inherent danger of
law enforcement that an arrestee may harbor ill will against the
arresting officer and, at some point thereafter, attack the officer.
*However, what is missing in the present case is a showing that
the officer's presence at the scene of the injury was occasioned by
his duties as a police officer.* That is, plaintiff was not at Wally's
Bar because he was answering a police call. Rather, he was social-
izing there while off duty. It might be appropriate to apply the fire-
man's rule had plaintiff been injured while responding on duty to a
bar brawl at Wally's Bar or, for example, while rendering assistance
to the bar in an attempt to eject Tardiff because of his intoxicated
condition and his refusal to leave. However, that is not what hap-

a police officer is intended to fulfill. See *Woods, supra* at 190-191; *Kreski, supra* at 368.[5] Consequently, I concur in the Court's decision to affirm the Court of Appeals decision.

### CONCLUSION

In *Gibbons*, Officer Gibbons was exercising his duty as a police officer while directing traffic when he was injured. In refusing to admit that this injury arose from the normal risks inherent in his profession, the plurality and concurrence ignore one of the basic reasons Michigan adopted this common-law rule. I would affirm the Court of Appeals decision in *Gibbons* to bar his action under the fireman's rule. In *Mariin*, Officer Mariin was not performing the very function that a police officer is intended to fulfill when he was injured. Consequently, I concur in the decision to affirm the Court of Appeals decision to reverse the trial court's grant of summary disposition in favor of defendant Fleur, Inc. I agree that the trial court erred when it concluded that the fireman's rule barred the action.

---

pened here. Plaintiff was not summoned to Wally's Bar to act as a police officer. *He was present at the bar as a private citizen and it is merely fortuitous that there was also present someone at the bar who harbored ill will toward plaintiff because of his profession.* [Emphasis added.]

[5] The hearing referee's decision that Officer Mariin's injury arose out of and in the course of his employment rests on the principles of the worker's compensation act, which are separate from those that govern the application of the fireman's rule.