ROBERTS v VAUGHN

Docket No. 105364. Argued November 9, 1998 (Calendar No. 7). Decided
December 28, 1998.

Mark L. Roberts, an unpaid volunteer firefighter and emergency medi-
cal technician for Tittabawassee Township, brought a negligence
action in the Saginaw Circuit Court against Fizena A. Vaughn and
Silvia Medina for injuries received when he responded to a car-
truck accident involving an automobile driven by Vaughn and
owned by Medina. The court, Robert L. Kaczmarek, J., granted
summary disposition for the defendants, concluding that the
firefighter's rule articulated in *Kreski v Modern Wholesale Electric
Supply Co*, 429 Mich 347 (1987), would encompass a voluntary,
part-time firefighter-EMT. The Court of Appeals, GRIFFIN, P.J., and
HOOD and E. M. THOMAS, JJ., affirmed the judgment of the circuit
court in an opinion per curiam, similarly concluding that the
firefighter's rule extends to volunteers. 214 Mich App 625 (1995)
(Docket No. 173231). The plaintiff appeals.

In a unanimous opinion by Justice BRICKLEY, the Supreme Court
*held*:

The firefighter's rule does not extend to volunteers.

' 1. The firefighter's rule generally waives the duty of care that
third parties owe firefighters and police officers. However, in
applying the rule a valid distinction exists between professional
and volunteer firefighters. While no duty is owed professional
firefighters for ordinary negligence on the ground that professional
safety officers presumably are extensively trained and specially
paid to confront dangerous situations in order to protect the pub-
lic, and that they occupy a unique relationship with the public and
those third parties who require the services of the officer, such a
relationship clearly is missing in the case of an uncompensated vol-
unteer firefighter.

2. *Kreski* recognizes that private law remedies sought by profes-
sional safety officers are misdirected and therefore barred on the
ground that professionals receive compensation for their efforts.
Those same concerns and underlying principles are not implicated
in the case of volunteers, however, who are not similarly compen-
sated for the same efforts. Thus, a common-law rule disallowing

recovery for volunteer rescuers is not only inconsistent with basic principles of restitution, but also is contrary to the considerations of public policy articulated in *Kreski*.

Reversed and remanded.

*Hurlburt, Tsiros, Allweil & Perez, P.C.* (by *John I. Tsiros*), for the plaintiff.

*Collison, Collison & Zimostrad, P.C.* (by *Eric W. Zimostrad*), and *Thomas J. Doyle* and *John J. Danieleski, Jr.*, for the defendants-appellees.

BRICKLEY, J. We granted leave in this case to determine whether the firefighter's rule adopted in *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347; 415 NW2d 178 (1987), applies to bar a suit brought by a volunteer firefighter injured while responding to an emergency.[1] After considering the public policy basis of the firefighter's rule, we conclude that the rule should not be extended to volunteers.

I

The facts are not in dispute. Plaintiff Mark Roberts was a part-time volunteer firefighter and emergency medical technician for Tittabawassee Township. Although the township provided Roberts with protective gear and some training, he received no pay, pension, or medical health benefits for his efforts. On December 21, 1990, plaintiff was dispatched to the scene of an accident involving a collision between a semitruck and an automobile operated by defendant Fizena Vaughn, an unlicensed minor driver. By the

---

[1] The firefighter's rule generally bars firefighters' or police officers' recovery for injuries sustained as a result of the negligence that gave rise to their emergency duties.

time plaintiff and other emergency personnel arrived on the scene, Ms. Vaughn was pinned beneath the dashboard. As plaintiff attempted to extricate Vaughn from the wreckage of her vehicle, she kicked her legs and knocked plaintiff to the pavement, causing his injuries. Plaintiff is now permanently disabled, and unable to return to his regular occupation.[2]

Plaintiff instituted this suit against defendant Vaughn and defendant Silvia Medina, alleging negligence and gross negligence with respect to Vaughn, and negligent entrustment with respect to Medina, who provided Vaughn with the keys to the vehicle.

Following discovery, the circuit court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim), concluding that the firefighter's rule articulated in *Kreski*, *supra*, "would encompass a voluntary, part-time fire fighter/EMT and reserve police officer such as the Plaintiff." Citing this Court's opinion in *Kreski*, the Court of Appeals affirmed the judgment of the circuit court, similarly concluding that the firefighter's rule extends to volunteers. We granted leave to appeal, 457 Mich 866 (1998), and now reverse.

II

The specific question this case presents is whether, notwithstanding any negligence on the part of defendants that may have caused plaintiff's injuries, plaintiff

---

[2] Before his disability, plaintiff was employed full time as a chemical operator and forklift driver for Dow Corning. He asserts that he would have been earning approximately $40,000 to $50,000 a year but for his disability. He presently receives $15,000 a year in worker's compensation benefits, pursuant to MCL 418.161; MSA 17.237(161), which provides such benefits to volunteer firefighters. He also receives an unspecified amount in disability payments.

is barred from recovery because he was a volunteer firefighter responding to an emergency. The firefighter's rule generally waives the duty of care that third parties owe firefighters and police officers. We examine whether the rationale of that rule justifies exonerating private parties from a duty of care toward volunteer safety workers.

In *Kreski, supra*, this Court formally adopted the firefighter's rule, thereby barring a suit brought on behalf of a professional firefighter who was killed when part of a burning building fell on him. Refusing to justify the rule on the doctrine of assumption of risk, we expressly embraced the firefighter's rule on the basis of a number of public policy rationales, thereby precluding recovery by police officers and firefighters for damages in tort for performance of their jobs, which they were already obligated to perform and for which they previously received compensation that was presumably calculated with considerations of the risks faced:

> The public hires, trains, and compensates fire fighters and police officers to deal with dangerous, but inevitable situations. Usually, especially with fires, negligence causes the occasion for the safety officer's presence.
>
> "The [fireman's] rule developed from the notion that taxpayers employ firemen and policemen, at least in part, to deal with future damages that may result from the taxpayers' own negligence. To allow actions by policemen and firemen against negligent taxpayers would subject them to multiple penalties for the protection." [*Id.* at 366 (citation omitted).]

After examining the nature of the service provided by firefighters and police officers, as well as the relationship of the officer to the public, we concluded that

the firefighter's rule was "based on practicability and common sense." *Id.* at 358. We further emphasized that, rather than representing a bright-line rule, the firefighter's rule would be subject to "fine tuning . . . to best balance the underlying rationales with the interest of allowing recovery when those rationales are not implicated." *Id.* at 371.[3]

More recently, in *Gibbons v Caraway*, 455 Mich 314; 565 NW2d 663 (1997), we confirmed the public policy rationale for the firefighter's rule, but circumscribed the scope of the rule, noting that all risks encountered by safety officers do not fall within the ambit of the rule.[4] We also held that a plaintiff's receipt of worker's compensation benefits is "not dispositive of the issue of the applicability of the fireman's rule." *Id.* at 328.[5]

---

[3] An overwhelming majority of states have adopted the firefighter's rule. Although subtle differences exist from one formulation of the firefighter's rule to the next, *Kreski's* formulation on the basis of public policy does not significantly differ from that of other jurisdictions. See, e.g., *Pottebaum v Hinds*, 347 NW2d 642 (Iowa, 1984); *Berko v Freda*, 93 NJ 81; 459 A2d 663 (1983); *Steelman v Lind*, 97 Nev 425; 634 P2d 666 (1981).

[4] In *Gibbons*, a five-justice majority, in two separate opinions, agreed that the firefighter's rule does not bar a claim for damages for injuries caused by the *subsequent* wrongdoing of a third party unconnected to the situation that brought the officer to the scene, where the wrongdoing resulted from wanton, reckless, or grossly negligent behavior. See *id.* at 325-326 (CAVANAGH, J.), 329-330 (BOYLE, J.). In *Mariin v Fleur, Inc*, a case consolidated and decided with *Gibbons*, an off-duty police officer was injured when an individual in a bar attacked the officer after recognizing the officer as the one who had arrested him several years previously and attacked him. We held that the firefighter's rule did not bar the officer's claim because the connection between the injury was too attenuated from the exercise of the officer's police function.

[5] On November 25, 1998, the Governor signed into law House Bill 4044, 1998 PA 389, which, inter alia, permits firefighters and police officers to bring suit against private parties for on-the-job injuries caused by gross negligence, thereby limiting application of the firefighter's rule to situations involving carelessness or ordinary negligence. The act, which does

III

Citing this Court's opinion in *Kreski*, along with decisions from two other jurisdictions, the Court of Appeals concluded that the firefighter's rule extends to volunteers:

> Although not directly compensated, volunteer fire fighters receive training, access to equipment, and worker's compensation. The relationship of the public with a salaried fire fighter is no different than with a volunteer. [214 Mich App 625, 630; 543 NW2d 79 (1995).]

We cannot agree with the Court of Appeals determination that no valid distinction exists in the application of the rule between professional and volunteer firefighters. We also reject the factors cited by the Court, as they do not rise to the level of societal and professional commitment articulated in *Kreski*.

As we have explained, the firefighter's rule is based on considerations of a public policy derived from the unique relationship between professional safety officers and the public. In accordance with that public policy, we concluded that no duty is owed for ordinary negligence because professional safety officers are presumably extensively trained and specially *paid* to confront dangerous situations in order to protect the public, and that, therefore, these safety officers undertake their profession with the knowledge that their personal safety is at risk. Because of the unique relationship between the public, the safety officer, and those third parties who require the ser-

---

not refer to the rule's application to volunteers, essentially codifies certain portions of Justice BOYLE's concurring opinion in *Gibbons, supra* at 329, and only applies to causes of action arising after November 30, 1998, the effective date of the act.

vices of the officer, the otherwise applicable duty of care toward the safety officer is replaced by the third party's contribution to tax-supported compensation for those services: when injury occurs, liberal compensation is provided.[6] This relationship is clearly missing between an uncompensated volunteer firefighter and a third party.[7]

Although defendants urge that they should be excused from the usual duty of care on the basis of

---

[6] Volunteer firefighters are specifically excluded from membership in the state retirement system provided for professional firefighters and police officers. MCL 38.562(2); MSA 5.3375(12)(2). Moreover, considering the lien arising under the worker's compensation statute, MCL 418.827(5); MSA 17.237(827)(5), the public incurs no substantial penalty in permitting a volunteer firefighter to pursue a tort remedy otherwise available to other citizens.

[7] Defendants cite the Nebraska Supreme Court's decision in *Buchanan v Prickett & Son, Inc*, 203 Neb 684; 279 NW2d 855 (1979), for the proposition that it is immaterial whether a firefighter is compensated or acts as a volunteer. Although the *Buchanan* court did not regard this distinction as being important, this can best be explained on the basis that the case was decided pursuant to assumption of risk principles rather than the public policy considerations found significant by this Court in *Kreski*.

Similarly, the cases cited by the Court of Appeals, *Waggoner v Troutman Oil Co, Inc*, 320 Ark 56; 894 SW2d 913 (1995), and *Carpenter v O'Day*, 562 A2d 595 (Del Super, 1988), are of little assistance, as they do not explicitly address the public policy questions that arise in applying the rule to volunteer, as opposed to professional, firefighters. In concluding that public policy supported application of the firefighter's rule to volunteers, the court in *Waggoner* referred to the availability of worker's compensation, and also cited an Arkansas statute that imposes a legal duty on volunteer firefighters to respond to fires. Michigan has no statute obligating volunteer firefighters to respond to fires, and, as noted above, the availability of worker's compensation benefits "is not dispositive of the issue of the applicability of the fireman's rule." *Gibbons, supra* at 328. In *Carpenter*, the Delaware trial court adopted the firefighter's rule on public policy grounds, but did not articulate what public policy considerations warranted application of the rule to volunteers. For criticism of judicial invocation of public policy without explaining its use, see Brachtenbach, *Public policy in judicial decisions*, 21 Gonzaga L R 1, 1 (1985) ("The most deficient [judicial] decision is one which asserts that the conduct involved is against public policy or sound morals and there the explanation stops. The law is entitled to more").

the public policy expressed by the firefighter's rule, at the root of defendants' arguments seems to be the presumption that a volunteer firefighter intends to act gratuitously when providing service to the community. Notwithstanding the accuracy or inaccuracy of that statement, implicit in defendant's rationale is the presumption that an individual who acts from altruistic motives is in some way not entitled to recovery for losses incurred during a rescue.[8] We are unwilling, without the benefit of empirical evidence and other related tools readily available to the Legislature, to deviate from tort principles that otherwise impose a general duty to avoid injuring others, particularly where such a departure is not supported by clear public policy. Moreover, denying volunteers the opportunity to recover on the basis that their undertaking is gratuitous essentially resurrects the doctrine of assumption of risk, which we expressly rejected in *Kreski* as an adequate rationale.

The promotion of mutual aid is clearly a valid ideal; thus, while the firefighter's rule articulated in *Kreski* recognizes that private law remedies sought by professional safety officers are misdirected and therefore barred on the basis of the fact that professionals receive compensation for their efforts, those same concerns and underlying principles are not implicated in the case of volunteers, who are not similarly com-

---

[8] Under the so-called *rescue doctrine*, it is well established that one who negligently creates a risk of harm may be liable to a volunteer whose intervention is reasonably foreseeable and who is exposed to personal peril in order to avert the danger to others or personal property. See, e.g., *Solomon v Shuell*, 435 Mich 104; 457 NW2d 669 (1990); Prosser & Keeton, Torts (5th ed), § 44, pp 307-308; 2 Restatement Torts, 2d, § 472, p 521; *Wagner v Int'l R Co*, 232 NY 176, 180; 133 NE 437 (1921) ("Danger invites rescue").

pensated for the same efforts. We find a common-law rule disallowing recovery for volunteer rescuers to be not only inconsistent with basic restitutionary principles, but also contrary to the considerations of public policy articulated in *Kreski*.[9]

IV

Although public policy warrants application of the firefighter's rule to professional firefighters and police officers, that same policy does not dictate that volunteers be precluded from recovery for injuries. Accordingly, plaintiff's suit in the present case should not be barred on the basis of the firefighter's rule. We reverse the decision of the Court of Appeals and remand this case to the circuit court for further proceedings.

MALLETT, C.J., and CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred with BRICKLEY, J.

---

[9] The parties argued, and we decide, this case on the basis of record evidence indicating that plaintiff received no compensation from the township. Although the instant plaintiff qualifies as a volunteer in the real sense of that word, we leave for another day situations involving safety officers who, although styled volunteers, receive more than nominal consideration for their efforts.